876 P.2d 158

**STATE of Idaho, Plaintiff–Respondent,**

v.

**Bobby McFARLAND, Defendant–Appellant.**

**No. 20486.**

Court of Appeals of Idaho.

June 17, 1994.

Hollis J. Anderson and Marty M. Raap, Wallace, for appellant. Marty M. Raap argued.

Larry EchoHawk, Atty. Gen., Myrna A.I. Stahman, Deputy Atty. Gen., Boise, for respondent. Paige L. Stevenson, Legal Intern, argued.

WALTERS, Chief Justice.

Bobby McFarland was charged in the brutal stabbing death of a Shoshone County man. While claiming to have no recollection of the incident, McFarland entered an *Alford* plea[1] to charges of second degree murder and robbery. The district court refused McFarland's repeated requests for a psychological evaluation and imposed a sentence of life in the custody of the Board of Correction, with a minimum mandatory term of ten years' incarceration. As discussed below, we conclude that the district court erred in refusing to order a psychological evaluation. Accordingly, we vacate the McFarland's sentence and remand the case to the district court for resentencing after first obtaining a psychological evaluation.

### Facts.

Sometime after midnight on January 10, 1992, Harold Bart was brutally beaten, robbed, and then stabbed to death near the Kellogg Lumber Company, in Shoshone County, Idaho. On January 18, McFarland

---

1. *See North Carolina v. Alford,* 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970).

and his co-defendant, Dan Graff, were arrested by police for robbing Julia Arnold as she was leaving the Yokes Pac 'N Save. The execution of a search warrant issued in conjunction with that offense turned up evidence incriminating Graff in the Bart murder. Graff admitted he was involved in the murder, and also made statements against McFarland. According to Graff, he and McFarland struck up a conversation with Mr. Bart while walking home from the grocery store. The three men engaged in brief and evidently cordial conversation, after which McFarland and Graff walked away. McFarland and Graff then decided to rob Mr. Bart. Acting in concert, they attacked Mr. Bart, beating and kicking him into unconsciousness. Graff claimed that McFarland then removed a bone-handled knife Mr. Bart was wearing from its sheath, and repeatedly stabbed Mr. Bart in the chest.[2] McFarland and Graff then removed from Mr. Bart his leather vest, wallet, watch and two one-dollar bills. McFarland wiped the knife clean and hid it under some nearby crates, and the two men then fled the scene.

McFarland denied Graff's accusations, claiming to have no recollection of the events the night Mr. Bart was murdered, although he acknowledged he had woken later that morning in possession of Mr. Bart's bloodied vest. Based on this evidence, McFarland[3] was charged with the first degree murder and robbery of Mr. Bart, and with the subsequent robbery of Ms. Arnold. In February of 1992, McFarland, through counsel, requested that the court order a psychological evaluation. The court evidently denied the motion.[4] Still maintaining he could not remember what had happened the night Mr. Bart was killed, McFarland entered *Alford* pleas to a reduced charge of second degree murder and to both of the robbery charges. The court accepted McFarland's pleas and ordered a presentence investigation report. McFarland filed another motion requesting

the court to order a psychological evaluation before sentencing. The motion was denied. After receiving and reviewing the report prepared by the presentence investigator, McFarland moved for a new report citing the report's improper inclusion of speculation and conjecture, and other alleged flaws. After conducting a hearing on the motion, the court denied McFarland's request, indicating that it would make the necessary corrections by interlineation.

The sentencing hearing was held on December 29, 1992. On December 31, the district court sentenced McFarland to an aggregate term of life, with ten years' fixed, for the murder and robbery of Mr. Bart, and ordered McFarland to serve a seven-year sentence, with one-year fixed, for the robbery of Ms. Arnold. The court further ordered that the sentences be served concurrently. McFarland timely filed this appeal.

Seeking to have his sentences set aside, McFarland asserts (1) that the district court erred in refusing to order a psychological evaluation prior to sentencing; (2) that the district court erred in refusing to order a new presentence report; and (3) that the district court erred in considering "lack of remorse" as a sentencing factor.

## 1. Refusal to Order a Psychological Evaluation.

 We turn first to whether the district court erred in refusing to order a psychological report. "After the determination of guilt it is essential that the court receive adequate information about the defendant before handing down the sentence. Individualizing sentences is impossible without such information." IDAHO JUDGE'S SENTENCING MANUAL, § 5.1 (1987 Rev.), *quoted in State v. Romero*, 116 Idaho 391, 393, 775 P.2d 1233, 1235 (1989). Before imposing a sentence, the court may, in its discretion, appoint a psychologist to evaluate

---

2. The subsequent autopsy showed that the stab wounds had perforated Mr. Bart's lungs, causing his death.

3. Graff was also charged, as a co-defendant, with these crimes.

4. The record reflects no ruling by the court, but no evaluation was conducted. The denial of this first, pre-plea motion for a psychological report is not raised as an issue in this appeal. However, McFarland has indicated that it may be the subject of a future application for post-conviction relief.

and report on the mental condition of the defendant. *See* I.C. § 19–2522; I.C.R. 32(d); *State v. Puente-Gomez*, 121 Idaho 702, 705, 827 P.2d 715, 718 (Ct.App.1992); *State v. Pearson*, 108 Idaho 889, 890, 702 P.2d 927, 928 (Ct.App.1985). As with any discretionary determination, however, the district court's action must be consistent with the applicable legal standards. *See State v. Hedger*, 115 Idaho 598, 600, 768 P.2d 1331, 1333 (1989).

The legal standards governing the court's decision whether to order a psychological evaluation and report are contained in I.C. § 19–2522. That statute provides that a psychological evaluation and report are *mandatory* "[I]f there is reason to believe the mental condition of the defendant will be a significant factor at sentencing and for good cause shown." I.C. § 19–2522(1);[5] *State v. King*, 120 Idaho 955, 958, 821 P.2d 1010, 1013 (Ct.App.1991). Furthermore, where the court appoints a psychologist to evaluate the defendant's mental condition, the contents of the ensuing report *must* satisfy the criteria set out in I.C. § 19–2522(3).[6] Our previous decisions indicate, however, that even if there is reason to believe the defendant's mental condition will be a significant factor at sentencing, the court nonetheless may deny the request for a new evaluation if the information contained in existing reports satisfies the requirements of I.C. § 19–2522(3). *See State v. Hernandez*, 122 Idaho 227, 232, 832 P.2d 1162, 1167 (Ct.App.1992); *King*, 120 Idaho at 958, 821 P.2d at 1013; *State v. Pearson*, 108 Idaho 889, 890, 702 P.2d 927, 928 (Ct.App. 1985); *State v. Bylama*, 103 Idaho 472, 474, 649 P.2d 1228, 1230 (Ct.App.1982).

Pursuant to the above standards, we will uphold the district court's refusal to order a psychological evaluation of McFarland *if* (1) the record supports a finding that there was no reason to believe his mental condition would be a "significant factor at sentencing," *see Puente-Gomez*, 121 Idaho at 706, 827 P.2d at 716; *or if* (2) the information already before the court adequately meets the requirements of I.C. § 19–2522(3).

In the instant case, the district judge made no findings on the record stating its basis for denying McFarland's request for a psychological evaluation. Consequently, we will infer the necessary predicate findings from the court's ruling. *See State v. Nobles*, 122 Idaho 509, 512, 835 P.2d 1320, 1323 (Ct. App.1991), *aff'd*, 122 Idaho 470, 835 P.2d 1281 (1992).[7] Such findings—that there was no

---

**5.** Idaho Code § 19–2522(1) provides in part:

If there *is* reason to believe the mental condition of the defendant will be a significant factor at sentencing and for good cause shown, the court *shall* appoint at least one psychiatrist or licensed psychologist to examine and report upon the mental condition of the defendant. . . .
(Emphasis added.)

**6.** Idaho Code § 19–2522(3) provides:

The report of the examination shall include the following:
(a) A description of the nature of the examination;
(b) A diagnosis, evaluation or prognosis of the mental condition of the defendant;
(c) An analysis of the degree of the defendant's illness or defect and level of functional impairment;
(d) A consideration of whether treatment is available for the defendant's mental condition;
(e) An analysis of the relative risks and benefits of treatment or nontreatment;
(f) The capacity of the defendant to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of law at the time of the offense charged.

If the court determines, after reviewing the psychological information, that the defendant's mental condition will indeed be a significant factor at sentencing, I.C. § 19–2523(1) provides that the sentencing judge shall consider such factors as:
(a) The extent to which the defendant is mentally ill;
(b) The degree of illness or defect and level of functional impairment;
(c) The prognosis for improvement or rehabilitation;
(d) The availability of treatment and level of care required;
(e) Any risk of danger which the defendant may create for the public, if at large, or the absence of such risk;
(f) The capacity of the defendant to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of law at the time of the offense charged.
I.C. § 19–2523(1); *State v. Pearson*, 108 Idaho 889, 891, 702 P.2d 927, 929 (Ct.App.1985).

**7.** In *Nobles*, we noted that with respect to the trial court's unique authority to make factual findings, "[t]he appellate court views all presumptions in favor of the trial court's exercise of

reason to believe McFarland's mental condition would be a significant factor at sentencing, or, alternatively, that the record contained sufficient information concerning McFarland's mental condition—will not be disturbed on appeal if they are supported by substantial, even if conflicting evidence. *Id.*

With these standards in mind, we turn to the specific questions presented by this appeal.

### A. Does the record support a finding that McFarland's mental condition would not be a significant factor at sentencing?

■ McFarland asserts that the information presented to the district court cannot reasonably be viewed to support a finding that his mental condition would not be a significant factor at sentencing. We agree.

The presentence report depicts McFarland as a young man of extremely low intelligence; his I.Q. score of 71 places him on the borderline level of mental functioning. He comes from a dysfunctional family offering him very little stability, and his parents had problems with alcohol abuse. McFarland's educational history is sketchy, but does show that in his eighth-grade year—the last year of his formal schooling—he was placed in "special education" classes exclusively, except for a course in shop. His classroom supervisor reported that McFarland had moods that vacillate: during "good days" he is capable of complying with the training program, but during his "bad days" he has problems completing his training. Although evidence that McFarland suffers from some sort of mental disability has long been present, no professional evaluation of McFarland's mental condition has ever been conducted.

In *State v. French*, 95 Idaho 853, 522 P.2d 61 (1974), the Supreme Court vacated a twenty-five year sentence for rape, holding that "the omission of [a psychological] evalua-

tion in this case deprived the district court of pertinent information essential to pronouncing an appropriate judgment." *Id.* at 855, 522 P.2d at 63. Characterizing the portion of the presentence report concerning the defendant's mental health as "sketchy and unskilled," the Court in *French* remarked:

> This offers absolutely no evaluation of or insight into the psychological makeup of the defendant which is so vital in light of the presentence report's social and economic description of the defendant. In this case the presentence report described the defendant as a family man and a dependable worker without any prior criminal record who committed a forcible rape without any explanation. This case begs for a psychological evaluation. The omission of such an evaluation in this case, deprived the district court of pertinent information essential to pronouncing an appropriate judgment.

*Id.* at 855, 522 P.2d at 63. Although *French* was decided prior to the enactment of I.C. § 19–2522, *see* 1982 Idaho Sess. Laws, ch. 368, § 9, p. 919, it presents a useful illustration of those circumstances in which a defendant's mental condition is, or clearly ought to be, a significant factor deserving evaluation and consideration in determining the appropriate sentence.

In the instant case, the record reveals that although McFarland had been a juvenile offender, he had no previous history of violence.[8] His sudden escalation from relatively petty crimes to the brutal act committed against Mr. Bart, coupled with the uncontroverted evidence that McFarland suffers from some unspecified mental disability rendering his level of mental functioning as "borderline," his mood swings and his claimed inability to remember any events from the night of the murder, are circumstances which beg for a psychological evaluation no less forcefully than did those outlined in *French*.

---

that authority, and the trial court's findings on such matters, *whether express or implied,* will be upheld if they are supported by substantial evidence." 122 Idaho at 512, 835 P.2d at 1323 (emphasis original).

8. McFarland's prior juvenile record included charges of truancy, minor in consumption, sever-

al petty theft allegations, burglary and grand theft. The more serious offense charges resulted in placing McFarland on probation for one year while less serious offenses were dismissed. Nonetheless, McFarland's past record contains no allegations of violent criminal behavior.

Furthermore, we note from the district court's comments at sentencing that it clearly *did* consider McFarland's mental condition and rehabilitative potential as significant factors, albeit without the benefit of a professional diagnosis of that condition or prognosis for improvement. The court stated:

It appears that Bobby Gene McFarland, a young man of 18 years of age, is one who would puzzle most people in that 99.99 percent of the time he would not act differently from anyone else. A pleasant appearing young man, able to smile and joke with people, obviously did not set out in the instance of the Bart death to kill Mr. Bart. There is no evidence and no reason for the Court to conclude that at the outset it was either of the defendants' intention to kill Mr. Bart.

But what is troubling is that when the opportunity happened to present itself by virtue of the presence of a knife, it seemed to be almost irresistable that the knife must be removed from the sheath and plunged into the body of Mr. Bart simply because he's there and the knife is there. The inability to stop this behavior once it's started, and absence of impulse control that may or may not be cured with age and maturity.

Having reviewed the information available to the district court in the instant case, we conclude that there was strong reason to believe McFarland's mental condition would be a significant factor at sentencing; a contrary finding by the district court would have been clearly erroneous. Accordingly, the district court was required to obtain an adequate report concerning McFarland's mental condition before imposing sentence.

**B. Did the record contain adequate information concerning McFarland's mental condition?**

▇ Having determined that the court was required to obtain information on McFarland's psychological condition, we next must determine whether the information provided to it satisfies the requirements of I.C. § 19–2522(3). We conclude that it does not. As pointed out by the state, the presentence report provides an adequate social, edu-cational, and economic history of McFarland. Such information, although extremely useful to the sentencing court, falls woefully short of meeting the statutorily prescribed standards for psychological evaluations.

▇ The record shows that during his pre-trial incarceration, McFarland's jailers called for a psychologist when they feared McFarland might commit suicide. A review of the report following the psychologist's visit indicates that her interview of McFarland was conducted for the limited purpose of assessing his risk of suicide, and was very brief. The information reflected in that report, though perhaps adequate for the purpose for which it was written, does not supply the in-depth analysis required by I.C. § 19–2522(3), which is vital to the district court's sentencing decision. *See State v. Pearson,* 108 Idaho 889, 890, 702 P.2d 927, 928 (Ct.App.1985). Accordingly, we conclude that the district court abused its discretion when it refused to order a psychological evaluation and report on McFarland. We therefore vacate McFarland's sentences and remand the case to the district court for resentencing. On remand, the trial judge is instructed to order a complete evaluation of McFarland's mental condition, in compliance with I.C. § 19–2522.

**2. Refusal to Order a New Presentence Report.**

▇ McFarland also challenges the adequacy of the report prepared by the presentence investigator. He contends that the report contained negative statements based entirely on speculation and conjecture, and that such statements so tainted the presentence report that the court abused its discretion in refusing to order a new one. We disagree. As the transcript from the hearing on the motion to conduct a new presentence report reveals, the district court declined to consider the specific statements to which McFarland now objects. *Compare State v. Mauro,* 121 Idaho 178, 183, 824 P.2d 109, 114 (1991). We therefore find no error in the court's refusal to order a new presentence report.

### 3. Improper Consideration of Lack of Remorse.

McFarland also contends that the court erred in considering lack of remorse as a factor in determining his sentence. He asserts that lack of remorse, although generally an appropriate factor at sentencing, was erroneously considered because he had entered an *Alford* plea, a form of plea in which guilt is not admitted. Again, the transcript of the district court's comments directly undermines McFarland's contention. In response to the state's argument that lack of remorse should be considered, the district court expressly stated that "the absence of remorse will not be held against the defendant." The balance of the court's comments make clear, however, that in view of McFarland's alleged inability to recall anything that happened the night of the Bart murder, the court would consider the *evidence* of his participation in that act. Such evidence obviously relates to the "nature of the offense"—a key focus of the inquiry in sentencing, and was appropriately considered at sentencing. *See Puente–Gomez,* 121 Idaho at 707, 827 P.2d at 720; *State v. Reinke,* 103 Idaho 771, 653 P.2d 1183 (Ct.App.1982). Accordingly, we find no error on this issue.

McFarland has also challenged his sentences on the ground that they are excessive under the circumstances. In view of our decision to remand the case for resentencing, however, we need not consider the issue on appeal.

### Conclusion.

We reverse the district court's refusal to appoint a psychiatrist or psychologist to evaluate and report on McFarland's mental condition. McFarland's sentences therefore are vacated and the case is remanded for resentencing consistent with this opinion.

LANSING and PERRY, JJ., concur.