195 P.3d 723

**STATE of Idaho, Plaintiff–Respondent,**

v.

**James Joseph Everett DURHAM, Defendant–Appellant.**

No. 34082.

Court of Appeals of Idaho.

July 15, 2008.

Review Denied Nov. 5, 2008.

---

Molly J. Huskey, State Appellate Public Defender; Sarah E. Tompkins, Deputy Appellate Public Defender, Boise, for appellant. Sarah E. Tompkins argued.

Hon. Lawrence G. Wasden, Attorney General; Kenneth K. Jorgensen, Deputy Attorney General, Boise, for respondent. Kenneth K. Jorgensen argued.

PERRY, Judge.

James Joseph Everett Durham appeals from his judgment of conviction and sentence for robbery. For the reasons set forth below, we affirm in part, vacate in part, and remand.

## I.

### FACTS AND PROCEDURE

In December 2006, Durham entered a bank wearing a hooded sweatshirt, gloves, and sunglasses. When he approached the counter, a teller asked him to remove his hood and sunglasses and he complied. He then handed the teller a note that read, "I have a gun need money $ please." The teller handed Durham several thousand dollars and he left the bank. Durham discarded his gloves in the street and his sweatshirt in a dumpster. Durham then entered a flower store and purchased flowers. Approximately twenty minutes after the robbery, an officer stopped Durham's car because it matched a description of the vehicle the suspect had used to flee the scene of the robbery. The bank teller identified Durham, and a subsequent search of his car revealed the stolen money.

Less than three weeks prior to the robbery, Durham had checked himself in to Intermountain Hospital, a psychiatric facility, because he thought he was about to lose control. At the hospital, Durham received two days of inpatient care before being re-

leased. The Intermountain doctor recommended follow-up care, but Durham did not pursue treatment.

Durham was charged with robbery. I.C. §§ 18–6501, 18–6502. The magistrate ordered a competency evaluation of Durham to be performed pursuant to I.C. § 18–211. Durham was determined to be competent and pled guilty to robbery. The district court ordered a presentence investigation (PSI) report, but no psychological evaluation for sentencing purposes was requested or ordered. The district court sentenced Durham to a unified term of fifteen years, with a minimum period of confinement of five years. Durham appeals.

## II.

## ANALYSIS

■ Durham asserts that the district court abused its discretion by failing to sua sponte order a psychological evaluation pursuant to I.C. § 19–2522(1) prior to sentencing, and thereby manifestly disregarded Idaho Criminal Rule 32. The determination whether to obtain a psychological evaluation lies within the sentencing court's discretion. I.C. § 19–2522(1); I.C.R. 32(d); *State v. Jones*, 132 Idaho 439, 442, 974 P.2d 85, 88 (Ct.App.1999). The legal standards governing the court's decision whether to order a psychological evaluation are contained in I.C. § 19–2522. Pursuant to I.C. § 19–2522(1), if there is reason to believe that the mental condition of the defendant will be a significant factor at sentencing and for good cause shown, the sentencing court must appoint a psychiatrist or licensed psychologist to examine and report upon the defendant's mental condition. The mental condition of a defendant can be a significant factor at sentencing when it may be an underlying factor in the crime at issue; for example, when the actions of the defendant are contrary to his or her history and character. *See State v. French*, 95 Idaho 853, 855, 522 P.2d 61, 63 (1974); *State v. McFarland*, 125 Idaho 876, 880, 876 P.2d 158, 162 (Ct.App.1994). A court-ordered psychological evaluation can assist the sentencing court in assessing the defendant's capacity to appreciate the wrongfulness of

his or her conduct or to conform his or her conduct to the requirements of the law at the time of the offense charged. *See* I.C. § 19–2523(1)(f). The evaluation can also aid the sentencing court in determining whether to authorize psychological treatment during a defendant's confinement or probation. *See* I.C. § 19–2523(2).

■ We will uphold the district court's failure to order a psychological evaluation if the record supports a finding that there was no reason to believe a defendant's mental condition would be a significant factor at sentencing or if the information already before the court adequately meets the requirements of I.C. § 19–2522(3). *McFarland*, 125 Idaho at 879, 876 P.2d at 161. Where a defendant fails to request a psychological evaluation or object to the PSI on the ground that an evaluation has not been performed, the defendant must demonstrate that by failing to order a psychological evaluation the sentencing court manifestly disregarded the provisions of I.C.R. 32. *Jones*, 132 Idaho at 442, 974 P.2d at 88.

The state first asserts that, by failing to request a psychological evaluation, Durham has not preserved this issue for appeal. Specifically, the state argues that, "because the manifest disregard rule adopted by the Court of Appeals to review claimed inadequacies in presentence reports for the first time on appeal applies only to Rule 32, there is no authority supporting Durham's assertion that this Court should review his assertion of error under I.C. § 19–2522."

■ A claim that the district court abused its discretion by failing to sua sponte order a psychological evaluation of a defendant before sentencing can be made on appeal without an objection to the lack of an evaluation or a request for an evaluation before the district court. *See, e.g., State v. Collins*, 144 Idaho 408, 409–10, 162 P.3d 787, 788–89 (Ct. App.2007); *State v. Adams*, 137 Idaho 275, 277, 47 P.3d 778, 780 (Ct.App.2002); *State v. Craner*, 137 Idaho 188, 189–90, 45 P.3d 844, 845–46 (Ct.App.2002). Therefore, the state's procedural argument is without merit.

The state next argues Durham has failed to establish that the record supports a find-

ing that his mental condition would have been a significant factor at sentencing. Specifically, the state suggests that Durham did not exhibit uncharacteristic or irrational behavior in committing the robbery.

■ A defendant's mental condition can be a significant factor at sentencing when that condition is an underlying factor in the commission of the crime at issue, especially when the defendant's actions are radically contrary to his or her history and character. *See, e.g., French,* 95 Idaho at 855, 522 P.2d at 63 (family man and dependable worker with no prior criminal record inexplicably raped his estranged wife at knife point); *Craner,* 137 Idaho at 190, 45 P.3d at 846 (defendant, who had significant record but no crimes of violence, acted irrationally and uncharacteristically by shaving his head because he thought he was being poisoned through his hair, lashing out violently against his family, and continuing his irrational behavior with disturbances at the jail for three days after being arrested); *McFarland,* 125 Idaho at 880, 876 P.2d at 162 (young man with extremely low intelligence from a dysfunctional family who suffered from an unspecified mental condition brutally beat and stabbed his victim to death despite no prior violent offenses).

In this case, Durham's crime was uncharacteristic and factually irrational. Durham has a prior record containing several charges of domestic battery that were amended to either harassment or disturbing the peace. He also has two prior assaults. However, Durham has never been charged with a robbery or any kind of theft, and the instant offense was Durham's first felony. Furthermore, immediately after receiving money from the teller, instead of fleeing the scene, Durham exited the bank and entered a flower shop and bought flowers. Although this odd behavior, standing alone, is insufficient to conclude that the district court should have been on notice that Durham's mental condition would be a significant factor at sentencing, the record contains many other indicators regarding Durham's mental health.

Perhaps most significant in this case is that Durham checked himself in to Intermountain Hospital less than three weeks pri-

or to committing the robbery. The report from Intermountain indicates that Durham has a "strong family history of psychiatric illness." It also concludes that Durham "has become a danger to himself." The discharge summary from Intermountain indicates that Durham checked himself in because:

> Depression had increased. He couldn't take it any more. He had difficulty controlling himself. He stated he was feeling suicidal. He had been diagnosed with depression and PTSD for quite a while, following the death of two of his daughters within just a few years. He states he couldn't contract for safety in the community. He started having some flashbacks so he decided to come to the hospital to get medication and try to stop drinking.

At Intermountain, Durham was treated for two days and released with instructions for outpatient care. Durham did not follow up on the recommended outpatient care.

The PSI contains information gathered from Durham's father. Durham's father told the investigator that Durham was admitted to an inpatient mental facility for thirty days when he was fifteen years old after a violent episode in which he threatened suicide. Durham's father "stressed that he feels his son has had a mental condition for years and years." The PSI also includes comments from Durham's father comparing Durham to his sister:

> He clarified that [if he is] sentenced to a jail term, he feels his [son] would be a suicide risk. He related that his eldest daughter 'was just like him, the same thing, ran away from home' and later gave up her children to different grandparents. Mr. Durham advised that his daughter disappeared, she was hallucinating, and they had not heard from her in several years. He added that they learned of her death in 2006 due to liver failure through Hospice personnel. He stressed that he believed his son was 'going through the same situation. It's like he's running from something, and I can't figure out what it is.'

Durham's father went on to conclude that he "firmly believe[d] that [his] son has a mental problem that [Durham's father] can't help

him with.... Mr. Durham expressed his hope that Idaho would 'do something' about his son's mental health problems, and that if his son received the help needed, that he believed he may have a possible future." These comments are another indicator that Durham's mental condition would have been a significant factor at sentencing. *See Adams*, 137 Idaho at 278, 47 P.3d at 781 (holding that "letters expressing the personal view of family members, *standing alone*, are insufficient to demonstrate that a mental condition will be a significant factor at sentencing") (emphasis added).

Finally, the mental health comments section of Durham's PSI provided:

Ada County jail records reflect that [Durham] was prescribed Zoloft to address depression and several mental health disorders. Included with the records is a Psychological Intake/History of Present Illness, which reflects his prior diagnosis of 'split personality disorder' through St. Luke's Regional Medical Center in 2000 after the death of his child; prior admission to Intermountain Hospital.

Furthermore, the PSI indicated that Durham's mental health was a major risk factor. The PSI recommended:

Case planning should focus on these risk factors, with the following recommendations: mental health treatment *as indicated upon completion of psychiatric or psychological evaluations* ....

(Emphasis added). Although the presentence investigator did not express concern over the lack of a psychological evaluation, the investigator's comments indicate that she thought a mental health evaluation was necessary for determining what course of treatment Durham should receive.[1]

At Durham's change of plea hearing, the following colloquy occurred between the district court and Durham:

Q. Do you take any medication for any physical or mental health problems?

A. Not at this time.

Q. Do you have a psychological problem or a medical problem for which you previously have taken medication.

A. Yes, sir.

Q. And what would that be?

A. Depression and there is a couple other in the report.

At sentencing, Durham's attorney maintained that Durham's actions in this case were a "cry for help." Durham's attorney argued:

You have a 32–year–old man who has a lifetime of significant mental health issues, including depression, anxiety, ADHD, post-traumatic stress disorder stemming from the loss of two young daughters, even an [sic] hint at [the] possibility [of] a split personality issue. There have been prior suicide attempts, et cetera. These are not just mild mental health issues. These are significant mental health issues, and he has been plagued by them most of his life.

The state asserted at sentencing that Durham was a threat to the community, candidly acknowledging that Durham may not be able to control himself because of his mental health. The state argued:

On 11–26–06, he was admitted to Intermountain Hospital feeling suicidal and unable to control himself. And that report states he has become a danger to himself. The state would argue at this point he has become a danger to the community and that he should not be allowed to basically terrorize the community with his behavior.

---

1. It is possible that the presentence investigator was referring to a psychological evaluation of Durham by the Department of Correction while incarcerated to determine appropriate treatment. However, as this Court held in *State v. Coonts*, 137 Idaho 150, 44 P.3d 1205 (Ct.App.2002):

   [T]he availability of a mental health evaluation by the Department of Correction [does not] satisfy the statutory mandate. Section 19–2522 does not require a psychological evaluation merely to enlighten correctional officials who must make decisions on the defendant's conditions of confinement and treatment while incarcerated; the statute requires that the evaluation be conducted *before* sentencing so that the trial court will have the benefit of the evaluator's insights in fashioning an appropriate sentence.

   *Id.* at 153, 44 P.3d at 1208.

He was discharged from Intermountain on 11–28, prescribed medications. Told to continue his treatment on an outpatient basis, which he did not do. A little more than two weeks later, the defendant commits the robbery. Admittedly he has substance abuse issues and mental issues, but that doesn't negate the fear that he puts into others by professing to have a gun, although a gun was not found, in order to rob a bank. The blunt truth is that the defendant can't be trusted in the community at this point, and he simply cannot or will not control his behavior.

At sentencing, the district court conveyed that it had reviewed Durham's admission materials from Intermountain Hospital. Both parties argued that Durham's mental condition was a significant factor. Indications in the record show that Durham was suffering from serious mental conditions that may have impacted his capacity to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of the law at the time of the offense and that may be subject to treatment. The district court, however, did not specifically mention Durham's mental condition during sentencing.

Based on the circumstances surrounding Durham's crime, the indications in the record that Durham suffered from multiple mental conditions and the PSI's recommendation of a psychiatric or psychological evaluation, we conclude that there was sufficient information before the district court to show that Durham's mental condition would be a significant factor at sentencing and, therefore, a psychological evaluation for the purposes of sentencing should have been ordered.

The state contends that Durham's failure to request a psychological evaluation or object to the PSI because it did not include a psychological evaluation was a tactical decision. The state asserts that, because additional psychological information could have worked to Durham's detriment at sentencing, it was a tactical decision on his behalf to take his chances with the information already before the court. Therefore, the state argues that we should find no error in the district court's failure to sua sponte order a psychological evaluation.

This Court has recently noted the many reasons behind ensuring that the district court has sufficient psychological information before it when sentencing a defendant, especially when the crime could entail a prison sentence of long duration.

[A psychological evaluation may] provide insights that would aid the sentencing court in understanding possible causes of his behavior, the prospects for helpful treatment, and his risk of future violence as they may bear upon his culpability, his potential for rehabilitation, and the duration of sentence that is necessary for retribution, deterrence, and the protection of society. The lengthier the sentence under consideration, the greater is a defendant's interest in being able to provide such psychological information to inform the court's sentencing decision.

*State v. Izaguirre,* 145 Idaho 820, 823, 186 P.3d 676, 679 (Ct.App.2008).

In this case, the district court did not have any information regarding Durham's ability to conform his conduct to the requirements of the law at the time of the offense. In the PSI, Durham described his mental condition at the time of the robbery, stating " 'I didn't know what I was thinking.' " I went insane. I want the Judge to understand. I want everybody to understand. I don't know. Furthermore, even the state argued at sentencing that Durham may have committed this robbery because he could not control his actions. As this Court noted in *Izaguirre,* here psychological information regarding Durham's mental culpability was especially important as his crime was punishable by up to life in prison. *See* I.C. § 18–6503.

A district court needs sufficient psychological information before sentencing a defendant, not just for the defendant's sake, but also in order to determine what is best for society. For example, it is not in society's best interests to incarcerate a mentally ill defendant for a substantial period of time if that individual poses no threat when properly diagnosed and treated. However, a seemingly innocuous defendant should not be released on probation if substantial mental defects mean the individual poses a significant

threat to society. In this case, the state only speculated that Durham's failure to order a psychological evaluation was a conscious tactical decision. Furthermore, because the interests of society, as well as the defendant, are at stake, a district court can err in failing to sua sponte order a psychological evaluation even if the defendant does not request one for whatever tactical reason. *See Coonts*, 137 Idaho at 153, 44 P.3d at 1208 (holding that "frustrations with defense counsel's lack of diligence do not, however, excuse the trial court from compliance with § 19–2522"). We acknowledge that Durham could refuse to cooperate with a psychological evaluation ordered by the district court, but that possibility is not a reason to omit ordering an evaluation. *See Estrada v. State*, 143 Idaho 558, 149 P.3d 833 (2006).

■ Having determined that Durham's mental health was a significant factor at sentencing, we next address the state's argument that there was sufficient information already before the district court to adequately meet the requirements of I.C. § 19–2522(3). The state contends that the information contained in the admission report and discharge summary from Intermountain Hospital and Durham's PSI met the requirements of I.C. § 19–2522(3).

Idaho Code Section 19–2522(3) provides:

The report of the examination shall include the following:

(a) A description of the nature of the examination;

(b) A diagnosis, evaluation or prognosis of the mental condition of the defendant;

(c) An analysis of the degree of the defendant's illness or defect and level of functional impairment;

(d) A consideration of whether treatment is available for the defendant's mental condition;

(e) An analysis of the relative risks and benefits of treatment or nontreatment;

(f) A consideration of the risk of danger which the defendant may create for the public if at large.

A psychologist's report conducted for a different purpose may not meet the requirements of I.C. § 19–2522(3). *McFarland*, 125 Idaho at 881, 876 P.2d at 163. In that case, jailers contacted a psychologist when they feared McFarland might commit suicide. The psychologist wrote a report after visiting with McFarland and that report was included in the record. However, this Court concluded that "the information reflected in that report, though perhaps adequate for the purpose for which it was written, does not supply the in-depth analysis required by I.C. § 19–2522(3)." *Id.*

Even a psychological report prepared pursuant to I.C. § 19–2522 may be insufficient. *State v. Pearson*, 108 Idaho 889, 891, 702 P.2d 927, 929 (Ct.App.1985). In that case, Pearson had allegedly spent twenty-seven of his thirty-six years in a mental institution and at least three years in jail. This Court determined, based in part on the seriousness of Pearson's mental condition, that an in-depth and thorough psychological evaluation supported by empirical evidence was needed for compliance with I.C. § 19–2522. *Id.* at 891–92, 702 P.2d 929–30.

In this case, the admission report from Intermountain Hospital contains a doctor's physical observations of Durham. The report diagnosed Durham with post-traumatic stress disorder. The report indicated that Durham was given "Zoloft to help with PTSD and depressive symptoms, Ambien for his insomnia, and also he was started on detox protocol with Librium." The report noted that Durham had a strong family history of psychiatric illness and also that the doctor encouraged Durham to participate in group therapy while at the hospital. The report concluded that Durham's "prognosis is thought to be good."

Although the Intermountain report contained some of the information outlined in I.C. § 19–2522(3), other information was not before the district court. For example, the report did not analyze the degree of Durham's illness or defect and his level of functional impairment. *See Craner*, 137 Idaho at 190, 45 P.3d at 846 (noting that the PSI did not contain an "evaluation of the psychologi-

cal factors surrounding the commission of Craner's offense"). The report did not discuss whether treatment—other than medication—was available for the Durham's mental condition. *See State v. Sabin,* 120 Idaho 780, 783–84, 820 P.2d 375, 378–79 (Ct.App. 1991) (finding error in the failure to order a psychological evaluation where the presentence investigator recommended one and noted that, without a psychological evaluation and testing, Sabin's prospects for treatment were difficult to determine). The report did not analyze the relative risks and benefits of treatment or nontreatment, nor did the report discuss the risk of danger that Durham may create for the public if at large. The Intermountain admission report was not conducted to assist the district court in assessing Durham's capacity to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of the law at the time of the offense charged. Furthermore, the report was not created to aid the district court in determining whether to authorize psychological treatment during Durham's confinement. Much like the evaluations in *McFarland* and *Pearson,* the Intermountain report in this case did not offer an in-depth psychological analysis. Therefore, we conclude that the information before the district court did not adequately meet the requirements of I.C. § 19–2522(3).

■ Finally, the state argues that, even if the record before the district court indicated that Durham's mental condition would have been a significant factor at sentencing and that the mental health information in the record did not satisfy the requirements of I.C. § 19–2522(3), the district court's failure to order a psychological evaluation was harmless. In *State v. Harper,* 129 Idaho 86, 91, 922 P.2d 383, 388 (1996), our Supreme Court applied the harmless error test to a district court's decision not to order a psychological evaluation pursuant to I.C. § 19–2522(3). The Harper Court concluded that the purpose of a psychological evaluation, as

outlined in I.C. § 19–2522, was to assist the district court at sentencing in determining whether to recommend psychological treatment during a defendant's incarceration. The Court noted that Harper requested that he receive further evaluation and treatment at the psychiatric unit of the state penitentiary. The Court concluded that the district court's failure to order an evaluation was harmless because the district court recommended Harper for such an evaluation and treatment. *Harper,* 129 Idaho at 91, 922 P.2d at 388.

In this case, notably absent from the programs recommended by the district court for Durham to participate in was any psychiatric or psychological evaluation or treatment.[2] Furthermore, in addition to aiding the district court in determining what programs to recommend at sentencing, a psychological evaluation pursuant to I.C. § 19–2522 has other purposes, including assisting the sentencing court in assessing the defendant's capacity to appreciate the wrongfulness of his or her conduct or to conform his or her conduct to the requirements of the law at the time of the offense. *See* I.C. § 19–2523(1)(f). A psychological evaluation also serves to both aid the district court in it decision whether to allow probation and determine the appropriate length of the sentence. *See Coonts,* 137 Idaho at 153, 44 P.3d at 1208. Therefore, we cannot conclude that the district court's failure to sua sponte order a psychological evaluation in this case was harmless.

### III.

### CONCLUSION

Durham has demonstrated that, by failing to order a psychological evaluation, the district court manifestly disregarded the provisions of I.C.R. 32. Accordingly, Durham's judgment of conviction is affirmed. However, we vacate Durham's sentence and remand for resentencing upon receipt of a psychological report in compliance with I.C. § 19–2522

---

2. The district court did recommend that Durham receive the "benefit of cognitive based programs,

substance abuse programs, the therapeutic com-

concerning Durham's mental condition.[3]

Chief Judge GUTIERREZ and Judge LANSING, concur.

---

munity, and anger and relationship and parenting programs."

3. Because we vacate Durham's sentence so that he may be resentenced with the benefit of a psychological evaluation, we decline to address his argument that his sentence was excessive.