**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 38038**

| | |
|---|---|
| STATE OF IDAHO, ) | |
| ) | **2012 Opinion No. 8** |
| Plaintiff-Respondent, ) | |
| ) | **Filed: February 8, 2012** |
| v. ) | |
| ) | **Stephen W. Kenyon, Clerk** |
| TYLER RAY CARTER, ) | |
| ) | |
| Defendant-Appellant. ) | |
| ) | |

Appeal from the District Court of the Fourth Judicial District, State of Idaho, Ada County. Hon. Thomas F. Neville, District Judge.

Sentence for aggravated assault on a corrections officer, vacated and case remanded.

Sara B. Thomas, State Appellate Public Defender; Jordan E. Taylor, Deputy Appellate Public Defender, Boise, for appellant. Jordan E. Taylor argued.

Hon. Lawrence G. Wasden, Attorney General; Kenneth K. Jorgensen, Deputy Attorney General, Boise, for respondent. Kenneth K. Jorgensen argued.

_____

LANSING, Judge

Tyler Ray Carter appeals from his conviction for aggravated assault on a correction facility officer, asserting two claims of error that relate to his sentencing proceedings. He contends that two psychological evaluations, conducted to determine his mental competence to aid in his defense, were erroneously included in the presentence investigation report and that the district court should have sua sponte ordered a psychological evaluation for use at sentencing.

**I.**

**BACKGROUND**

On May 12, 2009, while Carter was incarcerated at the Idaho Maximum Security Institution in the mental health tier, he caused a disturbance in the shower by breaking a chair and spitting on the window. A response team was called, and Carter was placed in arm and leg restraints. Officer Johnson was among several officers who participated in restraining Carter and

1

escorting him back to his cell. As the group was walking, Carter suddenly bent down or leaned forward, and then sprung upward and backward, slamming his head into the right side of Officer Johnson's head. Officer Johnson suffered permanent injuries as a result of the impact.

Carter was charged with aggravated battery on a correctional officer, Idaho Code § 18-915(2), with a persistent violator sentence enhancement, I.C. § 19-2514. At the request of defense counsel, the court ordered a competency evaluation pursuant to Idaho Code § 18-211. Dr. Chad Sombke evaluated Carter and prepared a report concluding that Carter was experiencing significant psychiatric symptoms but was competent to assist in his defense.

Carter originally pleaded not guilty, but on the morning of trial agreed to plead guilty in exchange for the State's agreement to dismiss the persistent violator enhancement. The district court accepted the plea and ordered a presentence investigation report (PSI). Defense counsel then requested that Carter's "psychiatric records" be attached to the PSI as follows:

> [DEFENSE COUNSEL]: Also, Judge, if you could, as part of your order, incorporate that you would like to receive a copy of his psych--psychiatric records--that are already in the--
>
> THE COURT: At IDOC [Idaho Department of Correction]?
>
> [DEFENSE COUNSEL]: IDOC, and I believe under the supervision of Dr. Sombke. I think that--
>
> THE COURT: Okay, okay. And--
>
> [DEFENSE COUNSEL]: --would be helpful.

The judge thereupon explained to Carter that a presentence investigator would come to speak with him, and that her report would be treated seriously by the court. The judge then asked for permission from Carter to obtain his psychiatric records:

> THE COURT: I'd like to have whatever psychiatric records exist out there in the world, including at Idaho Department of Corrections. Is that okay with you for me to have those records--
>
> THE DEFENDANT: Yes.
>
> THE COURT: --to know what the doctors have said about you, and what reports they've written?
>
> THE DEFENDANT: Yes.

THE COURT: You understand why that might be important for me to have? If--

THE DEFENDANT: Yes.

THE COURT: --if I have to make a sentencing decision, it would be important for me to have that information, wouldn't it?

THE DEFENDANT: Yes.

. . . .

THE COURT: If you have to sign a waiver or something, that's okay with you?

THE DEFENDANT: Yes.

The PSI ultimately included a competency evaluation that was prepared in 2005 for a different case, in which Carter was diagnosed with schizophrenia. The PSI may also have included the 2010 competency evaluation prepared in this case, although that is not clear from the record on appeal.[1] So far as indicated in the record, the PSI did not include any of Carter's psychiatric records generated at IDOC. At no point did Carter request augmentation of the PSI with IDOC records or request a psychological evaluation for sentencing pursuant to Idaho Code § 19-2522. At the sentencing hearing, both parties made arguments concerning Carter's mental health. In its comments at sentencing, the district court ultimately concluded that the head-butting incident was unrelated to Carter's schizophrenia and was instead just his choice to hurt someone. Carter was sentenced to a unified fifteen-year term of imprisonment, with five years determinate.

On appeal, Carter contends that the inclusion in his PSI of psychological evaluations that were conducted solely for the purpose of determining his competence to stand trial or assist with his defense violated Idaho Code § 18-215 and the Fifth Amendment to the United States Constitution. He also asserts that the district court committed error when it failed to sua sponte order a psychological evaluation for use at sentencing pursuant to Idaho Code § 19-2522. He therefore seeks resentencing.

---

[1] At the sentencing hearing, the court identified the 2005 evaluation as the "most recent" psychological information before the court.

3

## II.

## ANALYSIS

### A.    Inclusion of Competency Evaluations in PSI

Carter did not object to the attachment of competency evaluations to the PSI for the court's consideration in sentencing, but he asserts that their inclusion constitutes fundamental error reviewable on appeal despite the lack of objection below.

An Idaho appellate court generally will not consider an assertion of error on appeal unless the issue was preserved in the trial court proceedings. *State v. Perry*, 150 Idaho 209, 224, 245 P.3d 961, 976 (2010); *State v. Johnson*, 126 Idaho 892, 896, 894 P.2d 125, 129 (1995). This rule encourages parties to timely raise objections in order to give the trial court an opportunity to consider and resolve or avoid the mistake. *Puckett v. United States*, 556 U.S. 129, 134 (2009). Requiring a contemporaneous objection prevents the litigant from sandbagging the court, i.e., "remaining silent about his objection and belatedly raising the error only if the case does not conclude in his favor." *Id.* Nevertheless, a claimed trial error in a criminal case that was not followed by a contemporaneous objection may be reviewed on appeal if it amounts to fundamental error. To establish reversible fundamental error:

> (1) the defendant must demonstrate that one or more of the defendant's unwaived constitutional rights were violated; (2) the error must be clear or obvious, without the need for any additional information not contained in the appellate record, including information as to whether the failure to object was a tactical decision; and (3) the defendant must demonstrate that the error affected the defendant's substantial rights, meaning (in most instances) that it must have affected the outcome of the trial proceedings.

*Perry*, 150 Idaho at 226, 245 P.3d at 978 (footnote omitted).

Carter's first assertion of fundamental error is that the use of his competency evaluations at sentencing violated Idaho Code § 18-215.[2] This argument does not present an issue of

---

[2]    Idaho Code § 18-215 provides:

> A statement made by a person subjected to psychiatric or psychological examination or treatment pursuant to sections 18-211, 18-212 or . . . Idaho Code, for the purposes of such examination or treatment shall not be admissible in evidence in any criminal proceeding against him on any issue other than the defendant's ability to assist counsel at trial or to form any specific intent which is an element of the crime charged, except that such statements of a defendant to a

fundamental error because it asserts no infringement of a constitutional right. Where an appellant asserts a violation of a rule or statute rather than a constitutional error, the fundamental error doctrine may not be invoked. *Perry*, 150 Idaho at 228, 245 P.3d at 980; *State v. Kelly*, 106 Idaho 268, 277, 678 P.2d 60, 69 (Ct. App. 1984). Therefore, we will not address Carter's contention that Idaho Code § 18-215 was violated.

Carter also asserts that the use of his competency evaluations at sentencing violated the Fifth Amendment to the United States Constitution, which guarantees that "No person . . . shall be compelled in any criminal case to be a witness against himself." This safeguard against compelled self-incrimination applies to both the guilt and penalty phases of a trial. *Mitchell v. United States*, 562 U.S. 314, 325-27 (1999); *Estelle v. Smith*, 451 U.S. 454, 462-63 (1981); *Estrada v. State*, 143 Idaho 558, 563-64, 149 P.3d 833, 838-39 (2006); *State v. Lankford*, 116 Idaho 860, 871-72, 781 P.2d 197, 208-09 (1989). A competency evaluation of one charged with a crime ordinarily does not implicate the Fifth Amendment because any disclosures made by the defendant are not used against him but are used only for the neutral, limited purpose of determining whether he is competent to stand trial. *See Estelle*, 451 U.S. at 465. Fifth Amendment rights come into play, however, if disclosures made during a competency evaluation, or medical conclusions derived from such disclosures, are later used against the defendant at either the guilt or penalty phase of the proceedings. *Id*. *See also Estrada*, 143 Idaho at 564, 149 P.3d at 839 ("Incrimination is implicated . . . when punishment could be enhanced as a result of the defendant's statements"). Consequently, statements made by an accused during a competency evaluation and derivative psychiatric opinions generally may not be admitted against the individual for sentencing purposes unless the defendant was advised of the right against self-incrimination and waived those rights. *Estelle*, 451 U.S. at 469; *State v. Jockumsen*, 148 Idaho 817, 820, 229 P.3d 1179, 1182 (Ct. App. 2010).

We conclude that no Fifth Amendment violation occurred in Carter's case because the record establishes that the evaluations were not placed in evidence through any compulsion against Carter. It was the defense, not the State, the court, or the presentence investigator, who caused the competency evaluations to be placed before the court for sentencing purposes.

psychiatrist or psychologist as are relevant for impeachment purposes may be received subject to the usual rules of evidence governing matters of impeachment.

Defense counsel asked the district court to order inclusion in the PSI of Carter's psychiatric records "at IDOC" and "under the supervision of Dr. Sombke." Defense counsel's request to attach Dr. Sombke's records could reasonably be interpreted as referring to the two competency evaluations, as he is the psychologist who conducted both of these evaluations. Nothing in the record suggests that Dr. Sombke had any involvement with Carter's mental health treatment other than preparing the competency evaluations. Additionally, Carter personally authorized the Court to access "whatever psychiatric records exist out there in the world, including at Idaho Department of Corrections." The introduction of Carter's competency evaluations into evidence for sentencing did not violate his right against compelled self-incrimination where the defense itself requested their introduction.

Carter asserts, however, that defense counsel was *not* requesting use of the competency evaluations, but instead records of Carter's mental health treatment at IDOC. We do not find that to be clear in the record. The request from defense counsel was somewhat ambiguous. The term "psychiatric records" could narrowly refer to Carter's IDOC patient records from his care in the mental health section of the prison. Alternatively, "psychiatric records" could refer broadly to all records pertaining to Carter's mental health including the competency evaluations. Regardless, any limitations within defense counsel's request were not attached to Carter's own consents to the court's use of his psychological records. When the district court asked whether Carter would authorize the court to consider "whatever psychiatric records exist out there in the world," defense counsel uttered no clarification that the defense's request was for a narrower class of records. For fundamental error review, *Perry* places upon the defendant the burden to demonstrate that a constitutional error was clear and obvious. *Perry*, 150 Idaho at 226, 245 P.3d at 978. The record here does not demonstrate a clear constitutional violation because it does not clearly show that the use of Carter's competency evaluation for sentencing purposes was compelled rather than proffered by and for the defense. Because the record does not demonstrate that the inclusion of the competency evaluations in the PSI was a clear violation of an unwaived constitutional right, this claim of error is not reviewable as fundamental error.[3]

---

[3] Carter asserts that the inclusion of the competency evaluations in the PSI constitutes a continuing violation of the Fifth Amendment as long as they remain in his PSI in the possession of IDOC and the Commission of Pardons and Parole. Because Carter has not demonstrated that the initial inclusion of the evaluations was error, this claim of error also necessarily fails.

**B. Absence of Psychological Evaluation for Sentencing**

Carter next asserts that although he did not request the performance of a psychological evaluation for the court's consideration at sentencing, the district court should have ordered such an evaluation sua sponte because it was apparent that Carter's mental illness would be a significant factor at sentencing.

Idaho Code § 19-2522(1) directs that "[i]f there is reason to believe the mental condition of the defendant will be a significant factor at sentencing and for good cause shown, the court shall" appoint a psychiatrist or psychologist to examine the defendant and report to the court on the defendant's mental condition. This directive is mandatory where the circumstances described in the statute are present. *State v. Hanson*, ___ Idaho ___, ___ P.3d ___ (Jan. 6, 2012); *State v. Banbury*, 145 Idaho 265, 268, 178 P.3d 630, 633 (Ct. App. 2007); *State v. Coonts*, 137 Idaho 150, 152, 44 P.3d 1205, 1207 (Ct. App. 2002).

Idaho Criminal Rule 32 also addresses the utilization of mental health evaluations for sentencing. It states that the presentence investigator's analysis should include "the investigator's view of the psychological factors surrounding the commission of the crime or regarding the defendant individually" and, where appropriate, a specific recommendation regarding a psychological examination and a plan of rehabilitation. I.C.R. 32(b)(10). This Court has long held that a claim that the district court should have ordered a psychological evaluation sua sponte will be reviewed for a manifest disregard of Rule 32. *E.g.*, *Jockumsen*, 148 Idaho at 822, 229 P.3d at 1184; *State v. Craner*, 137 Idaho 188, 189-90, 45 P.3d 844, 845-46 (Ct. App. 2002); *State v. Jones*, 132 Idaho 439, 442, 974 P.2d 85, 88 (Ct. App. 1999); *State v. Wolfe*, 124 Idaho 724, 726, 864 P.2d 170, 172 (Ct. App. 1993). The manifest disregard of the Rule 32 standard had its genesis in *State v. Toohill*, 103 Idaho 565, 566-67, 650 P.2d 707, 708-09 (Ct. App. 1982), where the appellant argued that his PSI was inadequate because it did not include a full analysis of his psychological condition or present a plan of rehabilitation. This Court concluded that although this objection was not presented to the sentencing court, "[m]anifest disregard of the rule could not be countenanced on appeal without diminishing the reputation of the judicial process." Accordingly, a "claim that the district court abused its discretion by failing to sua sponte order a psychological evaluation of a defendant before sentencing can be made on appeal without an objection to the lack of an evaluation or a request for an evaluation before the

district court." *State v. Durham*, 146 Idaho 364, 366, 195 P.3d 723, 725 (Ct. App. 2008). As this Court recently observed in *State v. Rollins*, ___ Idaho ___, 266 P.3d 1211 (Ct. App. 2011):

> Idaho Code § 19-2522, not Rule 32, governs whether a psychological evaluation must be ordered. Nonetheless, subsequent to the enactment of I.C. § 19-2522, in cases where the defendant has neither requested a psychological evaluation nor objected to its absence, we have reviewed a claim of error, raised for the first time on appeal, under the manifest disregard standard. . . . Most of these cases have analyzed the standards of I.C. § 19-2522 to determine whether error occurred, but have retained the manifest disregard of Rule 32 standard to explain that the unobjected to error is reviewable.

*Id.* at ___, 266 P.3d at ___.[4]

Here, Carter's mental condition was undoubtedly a significant factor for the court's consideration at sentencing. Carter was housed in the mental health unit of the prison when the head-butting incident occurred that led to the present criminal charge. Long before the guilty plea hearing, the court had been notified that Carter had significant psychiatric problems, including schizophrenia. The court had ordered an evaluation in this case to determine Carter's competency to assist with his own defense and stand trial. Carter also had given notice of intent to raise a defense based on his mental condition and moved to have Dr. Sombke appointed as a defense expert for trial. And as discussed above, Carter requested that his psychiatric records be attached to the PSI to inform the court on Carter's mental health and its implications for sentencing. At the sentencing hearing, arguments of both counsel dwelt upon Carter's mental health and its implications for fashioning a sentence. Both suggested that the offense occurred while Carter was not being medicated or was in the process of some adjustment of his medication. The court then engaged in lengthy comments concerning Carter's psychological profile before concluding:

> This was not a--an instance, as far as the court understands, of the defendant being psychotic, not knowing who he was, where he was, or who he was with. This was about choices to act out against a correctional officer. It's about antisocial and

---

[4] In *Rollins* we also questioned whether the manifest disregard standard retains vitality after our Supreme Court's redefinition of fundamental error standards in *Perry*, and we invited briefing on that question in future cases. Most of the briefing in the present case was completed before issuance of our *Rollins* decision and therefore did not address the issue left open in *Rollins*. Because it has not been thoroughly briefed, we will not attempt to resolve that issue here but will adhere to the manifest disregard standard in the disposition of this appeal.

borderline personality traits that lead a person to make really incredibly bad choices.

This crime was totally unprovoked, it was unwarranted, it was vicious, and it had a devastating impact on the victim. It had less to do with the defendant's paranoid schizophrenia, in fact it had nothing at all to do with it, and more to do with his choices to simply hurt somebody . . . .

It is apparent that Carter's mental condition was a "significant factor for sentencing." Therefore, the district court was obligated, pursuant to Idaho Code § 19-2522, to order a psychological evaluation of Carter for sentencing purposes unless other information before the court satisfied the statutory requirement.

A new evaluation is not required if information contained in existing reports before the sentencing court satisfies the requirements of Idaho Code § 19-2522(3). *State v. Whipple*, 134 Idaho 498, 506, 5 P.3d 478, 486 (Ct. App. 2000); *State v. McFarland*, 125 Idaho 876, 879, 876 P.2d 158, 161 (Ct. App. 1994). That statute delineates the matters that are to be addressed in the psychological evaluation report prepared for sentencing:

The report of the examination should include the following:
(a) A description of the nature of the examination;
(b) A diagnosis, evaluation or prognosis of the mental condition of the defendant;
(c) An analysis of the degree of the defendant's illness or defect and level of functional impairment;
(d) A consideration of whether treatment is available for the defendant's mental condition;
(e) An analysis of the relative risks and benefits of treatment or nontreatment;
(f) A consideration of the risk of danger which the defendant may create for the public if at large.

The court here had before it for sentencing purposes at least one and perhaps two competency evaluations of Carter. As noted in footnote 1, *supra*, it is not clear whether the 2010 competency evaluation was included in the PSI, but if it was, it does not appear that the district court relied upon it. The court's comments appear to be drawn exclusively from the 2005 competency evaluation. Because that evaluation was conducted about four years before the aggravated assault for which Carter was being sentenced, information it contained regarding his mental condition was of limited value. Even assuming that both competency evaluations were considered by the district court, they do not serve as a substitute for a Section 19-2522 psychological evaluation because they do not address many of the factors specified in the statute.

9

Because the purposes of a competency evaluation and a psychological evaluation for sentencing are fundamentally different, the former is not likely to substitute for the latter, even if the competency evaluation is properly before the court for use at sentencing. *See*, *e.g., State v. Banbury*, 145 Idaho 265, 270, 178 P.3d 630, 635 (Ct. App. 2007) ("[P]sychological evaluations to determine a defendant's competence to stand trial or aid in his defense conducted pursuant to I.C. § 18-211 often will be insufficient to inform the court's sentencing decision because they will not address the factors delineated in I.C. § 19-2522(3)"); *McFarland*, 125 Idaho at 881, 876 P.2d at 163 ("The information reflected in [psychologist's] report [to determine if defendant was suicidal], though perhaps adequate for the purpose for which it was written, does not supply the in-depth analysis required by I.C. § 19-2522(3), which is vital to the district court's sentencing decision."). Carter's competency evaluation reports include information addressing factors (a) through (c) of Idaho Code § 19-2522(3). They do not, however, inform the court on the remaining factors--consideration of whether treatment is available for a defendant's mental condition, the relative risks and benefits of treatment or nontreatment, and the risk of danger that the defendant presents to the public.

Importantly, the competency evaluations also do not address whether Carter's mental illness played a role in his commission of the aggravated assault. Although Idaho Code § 19-2522(3) does not include the defendant's mental status at the time of the charged offense as a point that must be addressed in a psychological evaluation,[5] a companion statute, Idaho Code § 19-2523, states:

> In determining the sentence to be imposed in addition to other criteria provided by law, if the defendant's mental condition is a significant factor, the court shall consider such factors as:
>
> . . . .
>
> (f) The capacity of the defendant to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of law at the time of the offense charged.

This factor--whether Carter's actions were a product of his schizophrenia or were merely a malicious choice--appears to have been the primary issue regarding Carter's mental health that

---

[5]  Idaho Code § 19-2522(1) states: "The order appointing or requesting the designation of a psychiatrist or licensed psychologist shall specify the issues to be resolved for which the examiner is appointed or designated." Thus, a sentencing court may direct that the mental health evaluator address topics in addition to those delineated in Section 19-2522(3).

the district court considered at sentencing. By determining that the head-butting incident was unrelated to Carter's schizophrenia, the court considered an appropriate factor, but did so without the guidance of a psychological evaluation. The competency evaluations contain little or no pertinent information illuminating the issue. Of course, the 2005 competency evaluation could not answer that question. The 2010 evaluation notes that "Mr. Carter appears to be able to make rational decisions in response to well-explained alternatives," and had the capacity to make rational decisions in court. It also states, however, that Carter reported having auditory hallucinations telling him to do bad things, that he has a difficult time resisting the impulses of those hallucinations, and that he was apparently not exaggerating his symptoms.

In *Durham*, 146 Idaho at 369-70, 195 P.3d at 728-29, this Court found the failure to order a psychological evaluation was error when:

> Indications in the record show that Durham was suffering from serious mental conditions that may have impacted his capacity to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of the law at the time of the offense and that may be subject to treatment.
> . . . .
> In this case, the district court did not have any information regarding Durham's ability to conform his conduct to the requirements of the law at the time of the offense.

Similarly, in *State v. Collins*, 144 Idaho 408, 410, 162 P.3d 787, 789 (Ct. App. 2007), we stated:

> At sentencing, the district court reached conclusions regarding Collins's mental condition. Specifically, the district court stated: "I don't think you were trying to kill yourself. I think you were just lashing out in anger at the circumstances and everything around you." The district court then went on to conclude that Collins "may need some mental health intervention. I rather suspect you do. But even with that, that's not someone else's responsibility." As these statements demonstrate, the district court made decisions about Collins's mental condition, the role it played in his crimes, and how that was to affect his sentence, without any formal psychological evaluation to assist in that determination. In making its sentencing decisions in the absence of any specific information on Collins's mental condition, the district court manifestly disregarded the provisions of I.C.R. 32 and abused its discretion.

*See also Craner*, 137 Idaho at 190, 45 P.3d at 846 (finding a manifest disregard primarily because "[t]here was no evaluation of the psychological factors surrounding the commission of Craner's offense.").

11

Here, the two competency evaluations were inadequate to satisfy the requirements of Idaho Code § 19-2522, whether viewed individually or collectively. They also do not address a factor that was apparently of primary significance to the district court--how Carter's mental health affected his culpability for the crime. If the PSI had complied with Carter's request and included *all* of his available mental health records, including those generated at the prison, it is possible that they collectively would have satisfied the mandate of Section 19-2522, but the only mental health records that ultimately were included in the PSI are insufficient for that purpose. Therefore, we are constrained to hold that the district court erred in failing to order a psychological evaluation sua sponte, and Carter must be resentenced.

## III.
## CONCLUSION

Carter's sentence is vacated and the case is remanded for further proceedings consistent with this opinion.

Judge GUTIERREZ and Judge MELANSON **CONCUR.**