**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 38755**

| | | |
|---|---|---|
| STATE OF IDAHO, | ) | 2012 Opinion No. 43 |
| | ) | |
| Plaintiff-Respondent, | ) | Filed:  August 20, 2012 |
| | ) | |
| v. | ) | Stephen W. Kenyon, Clerk |
| | ) | |
| JOSEPH RICHARD CLINTON, | ) | |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |

Appeal from the District Court of the Fourth Judicial District, State of Idaho, Ada County.  Hon. Deborah A. Bail, District Judge.

Judgment of conviction and unified sentence of twenty years, with three years determinate, for lewd conduct with a minor child under sixteen, <u>affirmed</u>.

Sara B. Thomas, State Appellate Public Defender; Shawn F. Wilkerson, Deputy Appellate Public Defender, Boise, for appellant.  Shawn F. Wilkerson argued.

Hon. Lawrence G. Wasden, Attorney General; Jason M. Gray, Deputy Attorney General, Boise, for respondent.  Jason M. Gray argued.

---

GUTIERREZ, Judge

Joseph Richard Clinton appeals from the judgment of conviction and sentence entered upon his guilty plea to lewd conduct with a minor child under sixteen.  For the reasons set forth below, we affirm.

**I.**

**FACTS AND PROCEDURE**

Sixty-seven-year-old Clinton was indicted for lewd conduct with a minor child under sixteen, Idaho Code § 18-1508, based on an incident where he lured a seven-year-old girl into his home and touched her inappropriately.  Due to defense counsel's concerns, a competency evaluation was conducted by Dr. Craig Beaver, who initially deemed Clinton incompetent to stand trial.  Dr. Beaver noted Clinton exhibited significant impairment and offered a probable

1

diagnosis of dementia. However, in an amended evaluation, Dr. Beaver surmised Clinton was not as impaired as he initially perceived and was competent to stand trial.

Pursuant to a plea agreement, Clinton pled guilty as charged in return for the State's agreement to recommend a twenty-five-year sentence and to recommend either probation or a period of retained jurisdiction if Clinton's psychosexual evaluation indicated he was amenable to treatment. The district court ordered a psychosexual evaluation and social/sexual assessment to be performed. Clinton stipulated his competency evaluations could be used in preparation of the psychosexual evaluation.

The psychosexual evaluation, performed by Dr. Michael Johnston, indicated Clinton was a high risk to reoffend, but was amenable to treatment. It also noted Clinton had difficulty comprehending and participating in the evaluation. At sentencing, Clinton's mental health was discussed by the parties at length. The district court refused Clinton's request for probation or a period of retained jurisdiction, citing its concern that Clinton's dementia reduced his ability to control his sexual impulses and his prospects of being rehabilitated. The district court imposed a unified sentence of twenty years, with three years determinate. Clinton filed a timely Idaho Criminal Rule 35 motion to reduce his sentence, which was denied. Clinton now appeals, contending the district court erred in failing to sua sponte order a psychological evaluation at sentencing and in imposing an excessive sentence.

## II.

## ANALYSIS

Clinton contends the district court abused its discretion and acted in manifest disregard of the pertinent provisions of Idaho Criminal Rule 32 and Idaho Code § 19-2522 when it failed to sua sponte order a psychological evaluation of Clinton prior to sentencing. In the alternative, he argues the district court imposed an excessive sentence in light of his mental health issues.

### A. Psychological Evaluation

Clinton contends the district court was required to sua sponte order an additional psychological evaluation (separate from the psychosexual evaluation) pursuant to Idaho Code § 19-2522 because the court had reason to believe Clinton's mental health, specifically his dementia, would be a significant factor at sentencing and had no other information before it meeting the statute's requirements. By sentencing him without a psychological evaluation

2

complying with section 19-2522, Clinton argues, the court acted with manifest disregard of Idaho Criminal Rule 32.

Section 19-2522 specifies that "[i]f there is reason to believe the mental condition of the defendant will be a significant factor at sentencing and for good cause shown," the court must appoint a psychiatrist or psychologist to evaluate and report upon the defendant's mental condition to inform the court's sentencing decision. The statute further directs that the report of the evaluation should include the following:

(a) A description of the nature of the examination;
(b) A diagnosis, evaluation or prognosis of the mental condition of the defendant;
(c) An analysis of the degree of the defendant's illness or defect and level of functional impairment;
(d) A consideration of whether treatment is available for the defendant's mental condition;
(e) An analysis of the relative risks and benefits of treatment or nontreatment;
(f) A consideration of the risk of danger which the defendant may create for the public if at large.

I.C. § 19-2522(3). Relatedly, Rule 32 specifies the elements to be included in the presentence investigation (PSI) report, including information on the health of the defendant where relevant to the sentencing decision, I.C.R. 32(b)(8), and where appropriate, the presentence investigator's analysis and recommendation regarding a psychological evaluation, I.C.R. 32(b)(10).

A psychological evaluation is not required in every case where the defendant claims some mental illness or disability. *State v. Jockumsen*, 148 Idaho 817, 822, 229 P.3d 1179, 1184 (Ct. App. 2010). Rather, the decision of whether to obtain a psychological evaluation lies within the sentencing court's discretion. I.C.R. 32(d); *Jockumsen*, 148 Idaho at 822, 229 P.3d at 1184; *State v. Durham*, 146 Idaho 364, 366, 195 P.3d 723, 725 (Ct. App. 2008); *State v. Craner*, 137 Idaho 188, 189, 45 P.3d 844, 845 (Ct. App. 2002). As with any discretionary decision, however, the district court's action must be consistent with applicable legal standards. *Jockumsen*, 148 Idaho at 822, 229 P.3d at 1184; *State v. McFarland*, 125 Idaho 876, 879, 876 P.2d 158, 161 (Ct. App. 1994). A district court's election not to order a psychological evaluation will be upheld on appeal if the record can support a finding that there was no reason to believe the defendant's mental condition would be a significant factor at sentencing or if the information already before

3

the court adequately met the requirements of section 19-2522(3). *See* I.C. § 19-2522(6);[1] *Jockumsen*, 148 Idaho at 822, 229 P.3d at 1184; *Durham*, 146 Idaho at 366, 195 P.3d at 725; *State v. Collins*, 144 Idaho 408, 409, 162 P.3d 787, 788 (Ct. App. 2007). However, because Clinton raises the issue for the first time on appeal, in light of the Idaho Supreme Court's recent clarification of the fundamental error doctrine in *State v. Perry*, 150 Idaho 209, 245 P.3d 961 (2010), we first must examine the question of how to approach appellate review of a district court's failure to order such an evaluation when no request for, or objection to the lack of, such an evaluation was made.

### 1. Continued viability of the manifest disregard standard in light of *Perry*

For some time, this Court has adhered to the rule that where a defendant did not request a psychological evaluation or object to the absence of such an evaluation in the PSI report, the defendant must demonstrate that by failing to order such an evaluation, the sentencing court manifestly disregarded the provisions of Rule 32. *Jockumsen*, 148 Idaho at 822, 229 P.3d at 1184; *Durham*, 146 Idaho at 366, 195 P.3d at 725. However, the question now arises as to the continued viability of the manifest disregard standard in light of the comprehensive fundamental error standard of review set forth recently by the Idaho Supreme Court in *Perry*, 150 Idaho 209, 245 P.3d 961. In two recent cases, we recognized this question must eventually be settled, but have thus far declined to address it because the parties had not briefed the issue. *See State v. Carter,* Docket No. 38038 (Ct. App. Feb. 8, 2011) (petition for review granted May 14, 2012); *State v. Rollins*, 152 Idaho 106, 266 P.3d 1211 (Ct. App. 2011). Given that both parties have

---

[1] This subsection provides:

> (6) If a mental health examination of the defendant has previously been conducted pursuant to section 19-2524, Idaho Code, and a report of such examination has been submitted to the court, and if the court determines that such examination and report provide the necessary information required by this section, including all of the information specified in subsection (3) of this section, then the court may consider such examination and report as the examination and report required by this section and need not order an additional examination of the defendant's mental condition.

I.C. § 19-2522(6).

4

adequately briefed the issue in this case, we proceed to address the continued viability of the manifest disregard standard in light of *Perry*.

### a. Background

In *Rollins*, although not deciding the issue, this Court reviewed the specifics of both Rule 32 and section 19-2522, as well as the origins and development of the manifest disregard standard and its potential intersection with the fundamental error standard set forth in *Perry*. In regard to Rule 32, we noted that as its title and introductory sentence make clear, the rule governs the preparation of PSI reports.[2] Specific to psychological information, the rule states the presentence investigator should include in the PSI report "a complete summary of the presentence investigator's view of the psychological factors surrounding the commission of the crime or regarding the defendant individually which the investigator discovers." I.C.R. 32(b)(10). The rule also dictates that, when appropriate, the investigator's analysis should include a specific recommendation regarding a psychological evaluation and a plan of rehabilitation; however, while the investigator may recommend such an evaluation, the decision whether to order the evaluation is made by the sentencing judge. I.C.R. 32(d). On the other hand, section 19-2522 sets forth the standards governing the *sentencing court's* duties (without mention of the PSI) concerning when psychological evaluations are to be ordered, the contents of the evaluation, and procedures governing evaluations.

We then discussed in *Rollins* the development of the manifest disregard standard applicable to Rule 32, tracing it to *State v. Toohill*, 103 Idaho 565, 566-67, 650 P.2d 707, 708-09 (Ct. App. 1982), where Toohill argued his PSI report was inadequate because it did not provide a full analysis of his psychological condition or set forth a plan of rehabilitation. Toohill had not, however, raised the objection before the sentencing court. This Court, while acknowledging the general rule that issues must first be raised at the trial level to be considered on appeal, also recognized the exception for fundamental errors denoting a denial of due process. *Id.* at 566, 650 P.2d at 708. Noting that the fundamental error doctrine had not been extended to sentencing proceedings, we also recognized that PSI reports have a significant bearing on sentencing decisions and appellate review of the sentence. Further, Rule 32 was specifically enacted to

---

[2]     Idaho Criminal Rule 32 is entitled "Standard and procedures governing presentence investigations and reports."

5

regulate PSIs and explicitly directs the investigator, as appropriate, to recommend the court obtain a psychological evaluation or plan for rehabilitation. Thus, we concluded we would review an appellate claim of "manifest disregard" of the rule, but cautioned the review did not extend to a contention, made for the first time on appeal, that compliance with the rule was simply inadequate (as opposed to nonexistent). *Toohill*, 103 Idaho at 566-67, 650 P.2d at 708-09.

As to the origins of the applicable statute, we noted in *Rollins* that section 19-2522 was enacted in 1982, the same year *Toohill* was decided. *Toohill*, however, did not mention the statute, instead focusing on review of the PSI itself for manifest disregard of Rule 32 and not addressing the actual need to order a psychological evaluation under the standard set forth in section 19-2522.[3] Indeed, by their plain language, it is section 19-2522, not Rule 32, that governs *whether* a psychological evaluation must be ordered. Nevertheless, subsequent to the passage of section 19-2522, in cases where the defendant had neither requested a psychological evaluation nor objected to its absence, we have repeatedly reviewed a claim of error raised for the first time on appeal under the manifest disregard standard and have cited to *Toohill*. *Rollins*, 152 Idaho at 110, 266 P.3d at 1215 (citing cases applying the manifest disregard standard to such circumstances). *See also State v. Hanson*, 150 Idaho 729, 733, 249 P.3d 1184, 1188 (Ct. App. 2011) (noting that where a defendant fails to request a psychological evaluation under section 19-2522 *or* fails to object to the PSI report on the ground that an evaluation had not been performed, we have allowed review when a defendant demonstrated that, by failing to order a psychological evaluation, the sentencing court manifestly disregarded the provisions of Rule 32). In most of these instances, this Court analyzed the standards of section 19-2522 to determine whether error occurred, but then utilized the manifest disregard of Rule 32 standard to explain why the unobjected-to error was reviewable for the first time on appeal. *Rollins*, 152 Idaho at 110, 266 P.3d at 1215. We also noted in *Rollins* that the Idaho Supreme Court had not applied

---

[3] The failure to address Idaho Code § 19-2522 may have been due to the fact the statute was passed after the sentencing hearing in the case.

the manifest disregard standard either generally or specifically to psychological evaluations.[4] This continues to be true.

It is against this backdrop that the question arises as to whether the manifest disregard standard of review for unobjected-to error survives *Perry*. In *Perry*, the Idaho Supreme Court engaged in an extensive and comprehensive analysis of harmless error and fundamental error doctrines "[i]n order to establish a clear standard going forward." *Perry*, 150 Idaho at 220, 245 P.3d at 972. Specifically, the Court stated:

> We take this opportunity to clarify the standards employed by Idaho appellate courts in analyzing alleged trial errors for harmless error or fundamental error, so as to: (1) provide guidance to our Appellate Courts applying the doctrine; (2) promote judicial fairness and equal application of law by eliminating unnecessary ambiguities; (3) reinforce the judicial preference for contemporaneous objections before the trial court.

*Id*. The *Perry* Court further noted that multiple statements of law by Idaho appellate courts pertaining to the fundamental error doctrine have caused confusion and failed to provide appellate courts with a structured inquiry likely to lend itself to equal application. *Id*. at 221-22, 226, 245 P.3d at 973-74, 978. The Court then articulated the standard now applicable:

> [W]e hold that in cases of unobjected to fundamental error: (1) the defendant must demonstrate that one or more of the defendant's unwaived constitutional rights were violated; (2) the error must be clear or obvious, without the need for any additional information not contained in the appellate record, including information as to whether the failure to object was a tactical decision; and (3) the defendant must demonstrate that the error affected the defendant's substantial rights, meaning (in most instances) that it must have affected the outcome of the trial proceedings.

*Id*. at 226, 245 P.3d at 978 (footnote omitted).

---

[4]     The Supreme Court's only reference to the standard is in *State v. Wersland*, 125 Idaho 499, 501, 873 P.2d 144, 146 (1994), where the Court indicated the standard of review was whether the district court acted with manifest disregard to Idaho Criminal Rule 32 by permitting statements of certain persons to be included in the PSI report, whom Wersland alleged were not "victims" pursuant to statute. The *Wersland* Court cited no authority for its reference to the manifest disregard standard.

### b. Retention of manifest disregard standard

The threshold issue in the analysis we must undertake in this case, as we identified in *Rollins,* is whether the doctrine of fundamental error applies equally to sentencing issues as it does to trial errors. If it does not, this would be dispositive of the sentencing context present in this case. In *Toohill*, our analysis as to the application of fundamental error outside the trial context was rather brief on this point:

> As a general rule, issues must be raised in a trial court in order to be considered on appeal. *E.g.*, *State v. Holt*, 102 Idaho 44, 625 P.2d 398 (1981); *State v. Sharp*, 101 Idaho 498, 616 P.2d 1034 (1980). A limited exception to this rule applies to criminal cases where "fundamental error" is shown. *State v. Garcia*, 100 Idaho 108, 594 P.2d 146 (1979). "Fundamental error" denotes a denial of due process. Ordinarily, it refers to error which results in failure to afford the accused a fair trial. *See, e.g.*, *State v. LePage*, 102 Idaho 387, 630 P.2d 674 (1981); *State v. Baker*, 103 Idaho 43, 644 P.2d 365 (Ct. App. 1982).
>
> We have not been cited, nor has our research disclosed, any case where the Idaho Supreme Court has extended the "fundamental error" doctrine beyond the adjudication of guilt, to the sentencing process. Rather, the Supreme Court--without discussing "fundamental error"--has declined to review assertions that pre-sentence reports were inadequate, where no objections had been made at the trial court level. *E.g.*, *State v. Thacker*, 98 Idaho 369, 564 P.2d 1278 (1977); *State v. Wallace*, 98 Idaho 318, 563 P.2d 42 (1977).

*Toohill*, 103 Idaho at 566, 650 P.2d at 708. This Court nevertheless determined, noting the integrity of the courts and the reputation of the judicial process were implicated, that in cases where the rule regarding PSIs was manifestly disregarded, review of the sentencing process for the first time on appeal was appropriate. *Id.* On one hand, this holding could arguably be read as *extending* fundamental error review to the sentencing process--which had not previously been done--and articulating the egregiousness of the rule violation (manifest disregard) necessary for reversal on that basis. *Rollins*, 152 Idaho at 112, 266 P.3d at 1217. On the other hand, *Toohill* could be read as adopting a distinct standard for review of unobjected-to error specific to the sentencing process, distinct and independent from the fundamental error standard applicable to the adjudication of guilt stage.[5] *Rollins*, 152 Idaho at 112, 266 P.3d at 1217.

---

[5]     We noted in *Rollins* that this interpretation of *Toohill* may be bolstered by the fact this Court failed to explicitly state it was extending the fundamental error doctrine to the sentencing process. *State v. Rollins,* 152 Idaho 106, 112 n.2, 266 P.3d 1211, 1217 n.2 (Ct. App. 2011).

8

*Perry* itself does not expressly state the Supreme Court intended its re-articulation of the fundamental error standard to apply to review of unobjected-to error occurring after the determination of guilt. *Rollins*, 152 Idaho at 112, 266 P.3d at 1217. Indeed, the *Perry* Court's analysis of fundamental error referred, on several occasions, to "trial errors," the lack of "objection at trial," and "error [that] occurred at trial." *Rollins*, 152 Idaho at 112, 266 P.3d at 1217 (quoting *Perry*, 150 Idaho 209, 245 P.3d 961). However, subsequent to *Perry*, the Idaho Supreme Court has applied fundamental error to issues arising subsequent to the determination of guilt phase. In *State v. Longest*, 149 Idaho 782, 241 P.3d 955 (2010), the Court examined a claim of breach of a plea agreement as to sentencing recommendations under *Perry's* fundamental error standard. Although the Court ultimately determined Longest had not satisfied the three prongs of *Perry* to establish fundamental error, there was no suggestion by the Court that the *Perry* fundamental error standard was inapplicable to the sentencing process. *Longest*, 149 Idaho at 784, 241 P.3d at 957. More recently, in *State v. Gomez*, ___ Idaho ___, 281 P.3d 90 (2012), the Supreme Court utilized the *Perry* fundamental error standard to address Gomez's claim, raised for the first time on appeal, that the district court's order of restitution was erroneous because restitution cannot be imposed unless it is included in the plea agreement. The Court specifically noted "the alleged error occurred during the proceedings that followed a guilty plea," and "[u]nder *Perry*, the three part test for unobjected-to fundamental error applies to such criminal proceedings." *Gomez*, ___ Idaho at ___, 281 P.3d at ___. *See also State v. Reid*, 151 Idaho 80, 88, 253 P.3d 754, 762 (Ct. App. 2011) (applying the *Perry* fundamental error standard to Reid's contention that the district court violated his due process rights by considering, at sentencing, a particular transcript). In addition, as we noted in *Rollins*, prior to the issuance of *Perry* both the Supreme Court and this Court applied fundamental error standard to claimed error occurring after the trial stage. *Rollins*, 152 Idaho at 112-13, 266 P.3d at 1217-1218.

Accordingly, we conclude *Perry's* fundamental error standard is not restricted only to claimed errors occurring at trial, and therefore, we cannot say, based solely on the fact the error claimed in this case occurred after trial, that the fundamental error standard does not apply. Thus, we proceed to determine whether *Perry* supplanted the manifest disregard standard in regard to this *particular* sentencing stage issue.

On appeal, Clinton argues *Perry* did not replace the manifest disregard standard because *Toohill* makes clear the standard was not based on fundamental error or due process, but on the

9

importance of the trial courts' adherence to procedural rules when exercising their sentencing discretion. In this sense, Clinton argues, the manifest disregard standard is distinct and independent from the fundamental error doctrine and, therefore, remains unaffected by *Perry*. Clinton also contends the manifest disregard standard is not derived from fundamental error because "Idaho trial courts have an independent and statutorily directed duty to order mental health evaluations pursuant to I.C. § 19-2522." For support of this proposition, Clinton points to *State v. Hanson*, 152 Idaho 314, 319, 271 P.3d 712, 717 (2012), where the Supreme Court reaffirmed the mandatory and independent statutory duty of trial courts to order psychological evaluations under certain circumstances. The Court further noted the decision to order a psychological evaluation is generally discretionary, but discretion is curtailed due to the language of section 19-2522. In this sense, Clinton argues the Supreme Court recognized section 19-2522 requires the sentencing court to order a psychological evaluation, regardless of whether defense counsel requests one.

For its part, the State argues that *Perry's* fundamental error standard does supplant the manifest disregard standard articulated in *Toohill*, pointing to the *Perry* Court's "unambiguous" statement that "where an error has occurred at trial and was not followed by a contemporaneous objection, such error shall *only* be reviewed where the defendant demonstrates to an appellate court that one of his unwaived constitutional rights was plainly violated." *Perry*, 150 Idaho at 226, 245 P.3d at 978 (emphasis added).

Upon careful consideration, we conclude the fundamental error standard set forth by *Perry* does not supplant the manifest disregard standard. Initially, we note that, despite the language and apparent scope of *Perry*, the *Perry* Court neither addressed nor expressly overruled the manifest disregard standard this Court has consistently applied for many years. In other words, there was no effort by our Supreme Court to explicitly invalidate the manifest disregard standard, despite the opportunity to do so in *Perry* and in subsequent cases where *Perry* was applied to post-trial issues. Even prior to *Perry*, although the fundamental error was eventually routinely applied to post-trial proceedings by both this Court and our Supreme Court, *see, e.g., State v. Robbins*, 123 Idaho 527, 529, 850 P.2d 176, 178 (1993) (addressing, pursuant to fundamental error, the constitutionality of the defendant's sentence); *State v. Rutherford*, 107 Idaho 910, 915, 693 P.2d 1112, 1117 (Ct. App. 1985) (addressing the defendant's claim of breach of the plea agreement under the fundamental error doctrine), this Court continued to

10

apply the manifest disregard standard in this particular context, unabated by our Supreme Court, *see, e.g., Durham*, 146 Idaho at 366, 195 P.3d at 725; *Craner*, 137 Idaho at 189-90, 45 P.3d at 845-46.

Having concluded the Supreme Court has not foreclosed the continued application of the manifest disregard standard, we turn to the relevant substantive considerations--namely, that the incompatibility of *Perry* with vital considerations implicated by the use of psychological evaluations in fashioning an appropriate sentence is evident in several respects. We first note that the nature of the fundamental error standard, as articulated by our Supreme Court, focuses on the impairment of a *right of a defendant* that is so important that appellate review should not be denied, despite the defendant's failure to preserve the issue for appeal. Two of the prongs of the three-part *Perry* fundamental error standard relate to the nature of the defendant's right affected by the alleged fundamental error. On the other hand, section 19-2522 imposes a *duty* on the district court, which encompasses significantly broader considerations than the rights of an individual defendant. As we explore below, in large part, section 19-2522 was enacted to, and operates to, ensure well-informed sentencing decisions for the benefit and protection of society, as well as the defendant. *See Hanson*, 152 Idaho at 324-25, 271 P.3d at 722-23 (noting that section 19-2522 clearly indicates a psychological evaluation is *mandatory* under certain circumstances); *State v. Coonts*, 137 Idaho 150, 152, 44 P.3d 1205, 1207 (Ct. App. 2002) (holding that the language of section 19-2522(1) "is mandatory, requiring that the trial court obtain a psychological evaluation whenever there is reason to believe that the defendant's mental condition will be of significance for the determination of an appropriate sentence"); *McFarland*, 125 Idaho at 879, 876 P.2d at 161 (holding that under section 19-2522, "a psychological evaluation and report are *mandatory* '[i]f there is reason to believe the mental condition of the defendant will be a significant factor at sentencing.'").

In *Durham*, 146 Idaho at 371, 195 P.3d at 730, this Court recognized the importance of a psychological evaluation pursuant to section 19-2522 beyond its implication on an individual defendant's rights. In *Durham*, although a competency evaluation had been performed, no psychological evaluation was requested or offered for sentencing purposes. On appeal, we concluded there was sufficient information before the district court to show that Durham's mental condition would be a significant factor at sentencing and turned to the issue of whether the district court acted with manifest disregard of Rule 32 by failing to sua sponte order a

psychological evaluation. Specifically, we addressed the State's argument that Durham's failure to request a psychological evaluation or object to the PSI report because it did not include a psychological evaluation was a tactical decision to take his chances with the information already before the court because additional psychological information could have worked to Durham's detriment at sentencing. We rejected this assertion as a basis for finding it was not reversible error for a district court to fail to sua sponte order a psychological evaluation under the statute, pointing out the many reasons behind ensuring the district court has sufficient psychological information when sentencing a defendant:

> [A psychological evaluation may] provide insights that would aid the sentencing court in understanding possible causes of his behavior, the prospects for helpful treatment, and his risk of future violence as they may bear upon his culpability, his potential for rehabilitation, and the duration of sentence that is necessary for retribution, deterrence, and the protection of society.

*Durham*, 146 Idaho at 369, 195 P.3d at 728 (quoting *State v. Izaguirre*, 145 Idaho 820, 823, 186 P.3d 676, 679 (Ct. App. 2008)). For these reasons, we surmised that:

> A district court needs sufficient psychological information before sentencing a defendant, *not just for the defendant's sake, but also in order to determine what is best for society*. For example, it is not in society's best interests to incarcerate a mentally ill defendant for a substantial period of time if that individual poses no threat when properly diagnosed and treated. However, a seemingly innocuous defendant should not be released on probation if substantial mental defects mean the individual poses a significant threat to society.

*Durham*, 146 Idaho at 369-70, 195 P.3d at 728-29 (emphasis added). We discussed these same considerations in *Coonts*, 137 Idaho 150, 44 P.3d 1205. There, in finding the district court erred in failing to order a psychological evaluation, we noted the evaluation could have provided useful illumination for the assessment of the defendant's level of culpability and formulation of a sentence that would be appropriate to meet the goals of sentencing--namely, the protection of society, the deterrence of crime, the rehabilitation of the offender, and punishment or retribution. *Id*. at 153, 44 P.3d at 1208. We also noted that the availability of a mental health evaluation by the Department of Correction after Coonts was sentenced did not satisfy the statutory mandate, stating:

> Section 19-2522 does not require a psychological evaluation merely to enlighten correctional officials who must make decisions on the defendant's conditions of confinement and treatment while incarcerated; the statute requires that the

12

evaluation be conducted *before sentencing so that the trial court will have the benefit of the evaluator's insights in fashioning an appropriate sentence.*

*Id.* (emphasis added).

Given the implications of the statute as discussed above, it is apparent the mandate in section 19-2522 is markedly different than those errors to which *Perry's* fundamental error standard has been applied. For example, the primary impact of errors, such as the admission (or not) of certain evidence at trial, instances of prosecutorial misconduct, and the erroneous imposition of restitution, to which *Perry* has been applied, is almost exclusively on the individual defendant and his right to a fair trial. On the other hand, as the case law discussed above articulates, a district court's sentencing decision has the potential to impact society as a whole. Indeed, our statement in *Toohill*, 103 Idaho at 566, 650 P.2d at 708, that PSI reports "have a significant bearing upon sentencing decisions and upon appellate review of sentencing discretion," is as true today as it was then. In this regard, while the gate-keeping functions of *Perry*[6] are understandable where a defendant's individual rights are at issue, the resulting restriction on appellate review makes considerably less sense where a significant goal of section 19-2522 is to impose a duty on the district court in an effort ensure the court possesses the relevant information necessary to craft a sentence sufficient for the protection of society.

We also note that while the importance of the information required by section 19-2522 cannot be doubted, *Perry* could reasonably be understood as foreclosing the review of a trial

---

[6] The *Perry* Court explained the rationale behind the general rule that unpreserved errors will not be addressed on appeal thusly:

> "This limitation on appellate-court authority serves to induce the timely raising of claims and objections, which gives the [trial] court the opportunity to consider and resolve them." *Puckett v. U.S.*, [556] U.S. [129], [133], 129 S. Ct. 1423, 1428 (2009). Ordinarily, the trial court is in the best position to determine the relevant facts and to adjudicate the dispute. *Id.* "In the case of an actual or invited procedural error, the [trial] court can often correct or avoid the mistake so that it cannot possibly affect the ultimate outcome." *Id.* Furthermore, requiring a contemporaneous objection prevents the litigant from sandbagging the court, i.e., "remaining silent about his objection and belatedly raising the error only if the case does not conclude in his favor." *Id.*

*State v. Perry*, 150 Idaho 209, 224, 245 P.3d 961, 976 (2010).

court's manifest disregard of these requirements. The *Perry* Court held that "where . . . the asserted error relates not to infringement upon a constitutional right, but to violation of a rule or statute . . . the 'fundamental error' doctrine is not invoked." *Perry*, 150 Idaho at 228, 245 P.3d at 980 (quoting *State v. Kirkwood*, 111 Idaho 623, 626, 726 P.2d 735, 738 (1986)). Thus, under *Perry's* fundamental error standard, review could be obtained only if the failure to obtain such information under section 19-2522 amounts to an infringement upon a constitutional right, a doubtful proposition given that the rule is statutorily rooted. On this basis, the likelihood of obtaining appellate review pursuant to *Perry* of a district court's disregard of the duty imposed by section 19-2522 appears low.

This probable foreclosure of review on direct appeal is also troubling given the circumstances surrounding the enactment of section 19-2522 in 1982 as part of a larger overhaul of Idaho's statutory scheme concerning mental illness in criminal actions, the key effect of which was to eliminate the affirmative defense of insanity. Prior to 1982, Idaho utilized various forms of the insanity defense, most recently the Model Penal Code version of the defense. *State v. Delling*, 152 Idaho 122, 125, 267 P.3d 709, 712 (2011). The Model Penal Code formulation required that once a defendant's sanity was placed at issue, the State had to prove beyond a reasonable doubt either (1) that the defendant had no mental disease or defect at the time of the act, or (2) that, if such disease or defect existed, it did not cause a lack of substantial capacity either to appreciate the wrongfulness of his or her conduct or to conform his or her conduct to the requirements of law. *State v. White*, 93 Idaho 153, 160, 456 P.2d 797, 804 (1969). Since the insanity defense was abolished, Idaho has shifted to a model that focuses on whether a defendant could form the criminal intent necessary to be guilty of the crime to which he or she stands accused. *Delling*, 152 Idaho at 125, 267 P.3d at 712. The Legislature expressed its rationale for being one of the few states to abolish the insanity defense thusly:

> The goal of the proposed enactment is to *shift questions of mental illness to the sentencing phase* of a criminal case, to the extent possible, and thus to eliminate some of the confusion and inconsistency which results from considering mental illness on the question of guilt or innocence and to provide treatment for offenders in appropriate circumstances.

Statement of Purpose, S.B. 1396, RS 7822, 46th Leg., 2d Sess. (Idaho 1982) (emphasis added). This goal was further reiterated by another portion of the bill, codified in Idaho Code § 19-2523, which dictates that if a defendant's mental condition is a "significant factor," it must be

considered by the court in fashioning a sentence.[7] Thus, an effect of precluding direct appellate review of section 19-2522 could be to interfere with the Legislature's intent that the consideration of psychological issues be shifted to the sentencing phase.

Given the considerations we discuss above, we are not convinced that *Perry's* fundamental error standard is the proper standard to be applied in this context; nor can we comfortably say that a defendant's failure to request a psychological evaluation should be allowed to prevent review on direct appeal, which would be the essential result of applying the fundamental error standard. The manifest disregard standard serves to provide clear guidance to

---

[7]    Idaho Code § 19-2523 provides:

**Consideration of mental illness in sentencing.** (1) Evidence of mental condition shall be received, if offered, at the time of sentencing of any person convicted of a crime. In determining the sentence to be imposed in addition to other criteria provided by law, if the defendant's mental condition is a significant factor, the court shall consider such factors as:
> (a) The extent to which the defendant is mentally ill;
> (b) The degree of illness or defect and level of functional impairment;
> (c) The prognosis for improvement or rehabilitation;
> (d) The availability of treatment and level of care required;
> (e) Any risk of danger which the defendant may create for the public, if at large, or the absence of such risk;
> (f) The capacity of the defendant to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of law at the time of the offense charged.

(2) The court shall authorized treatment during the period of confinement or probation specified in the sentence if, after the sentencing hearing, it concludes by clear and convincing evidence that:
> (a) The defendant suffers from a severe and reliably diagnosable mental illness or defect resulting in the defendant's inability to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of law;
> (b) Without treatment, the immediate prognosis is for major distress resulting in serious mental or physical deterioration of the defendant;
> (c) Treatment is available for such illness or defect;
> (d) The relative risks and benefits of treatment or nontreatment are such that a reasonable person would consent to treatment. (of the offense charged).

(3) In addition to the authorization of treatment, the court shall pronounce sentence as provided by law.

parties and appellate courts on the issue, and given that it is a higher standard than that imposed on objected to error, it still serves as an incentive for defendants to raise their objections before the district court and to establish a record for review on appeal. Therefore, until the Idaho Supreme Court addresses the issue, in cases of unobjected-to error in regard to the ordering of a psychological evaluation for use in sentencing, this Court will continue to apply the manifest disregard standard. Thus, we turn to an inquiry as to whether the district court manifestly disregarded the requirement of the statute in this instance.[8]

### 2. Application of the manifest disregard standard

At sentencing, rejecting Clinton's request for probation or a period of retained jurisdiction, the district court imposed a unified sentence of twenty years, with three years determinate. In doing so, the district court noted Clinton's diagnosis of pedophilia and went on to discuss his additional mental health issues, especially emphasizing his dementia and the court's belief that this condition would interfere with treatment and the ability to "control his impulses" in regard to further sexual offenses. The court then stated:

> He's already had a very thorough sexual evaluation by Dr. Johnston [the psychosexual evaluator], and he already had treatment, so I do think that in the sense of a willingness to participate in treatment, he has demonstrated that in the past, but with the processes that are going on inside him now, it's not clear if he can benefit from it in the future.
> Unfortunately, sexual impulses tend to survive dementia. They tend to be whatever they were before the dementia process began, so I think, unfortunately, the risk in this case is quite high, and the practical solutions are non-existent.

On appeal, Clinton contends it is apparent from this transcript that the district court significantly relied on its assessment of Clinton's dementia (and its impact on his sexual

---

[8]     We take this opportunity to clarify the underpinning of the manifest disregard standard as to Idaho Code § 19-2522 as opposed to Rule 32. As we discussed above, the origin of the manifest disregard standard is our decision in *Toohill*, which did not mention the recently enacted section 19-2522. However, by their plain language, it is section 19-2522, not Rule 32, that governs whether a psychological evaluation must be ordered by the *district court*, and although we have repeatedly reviewed a claim of error under the stated standard of manifest disregard of Rule 32, we failed to articulate our reason for doing so. We now disavow that approach and hold that the proper articulation of the manifest disregard standard is whether the district court manifestly disregarded the requirements of section 19-2522.

behavior and amenability to treatment) in fashioning a sentence; yet, he argues, there was no "official prognosis" before the court that Clinton actually suffered from dementia, and the information that was before the court did not function as an adequate substitute for a psychological evaluation pursuant to section 19-2522. The State counters, arguing Clinton's dementia was not a "significant factor" at sentencing and, in the alternative, there was sufficient information before the court regarding Clinton's mental state, which the record indicates the court took into consideration, such that the district court did not "manifestly disregard" the strictures of section 19-2522 by not ordering an additional psychological evaluation. The State also argues Clinton cannot raise the issue for the first time on appeal because the district court had ordered and received a psychosexual evaluation, and therefore, Clinton's argument goes to the inadequacy of the evaluation in a certain area, as opposed to the complete disregard of the court's duty to order such an evaluation in certain circumstances.

Even assuming, without deciding, that Clinton is correct that his mental health was a significant factor at sentencing, we conclude the district court did not manifestly disregard section 19-2522 such that reversible error occurred. As we explained in *Toohill*, while manifest disregard of Rule 32 "could not be countenanced on appeal without diminishing the reputation of the judicial process" and, therefore, such a claim may be reviewed despite a lack of an objection below, such is not the case in regard to a "contention, made for the first time on appeal, that compliance with the rule was simply inadequate--*e.g.*, that the report should have developed a particular point further, or that certain information was incomplete or inaccurate." *Toohill*, 103 Idaho at 566-67, 650 P.2d at 708-09. Those matters, we held, were to be raised at the sentencing hearing. *Id*. at 567, 650 P.2d at 709.

We note that at sentencing, the district court did have a psychological evaluation before it, in the form of a psychosexual evaluation. In addition, the court possessed Clinton's social/sexual assessment, two competency reports from Dr. Beaver (which Clinton stipulated could be used for sentencing purposes) and the PSI report. In the first competency evaluation, Dr. Beaver recounted Clinton's significant impairments, but then noted the difficulty in identifying their origin, stating they may be due to dementia. Dr. Beaver then assigned a "DMS-IV-TR" (Diagnostic and Statistical Manual of Mental Disorders, Fourth Edition, Text Revision) diagnosis of dementia, along with other conditions. He further stated that obtaining Clinton's prior medical records and a comprehensive neurological evaluation would be necessary

to understand Clinton's underlying mental conditions. Ultimately, Dr. Beaver concluded he had "substantial reservations" about Clinton's competency to proceed.

Several months later, Dr. Beaver prepared an amended competency evaluation report after observing a videotape of Clinton's interview with detectives and a polygrapher and listening to audio recordings of multiple phone calls Clinton made to friends while incarcerated. Dr. Beaver noted that in the first evaluation he had identified the possibility Clinton was experiencing dementia, observed Clinton's "overt presentation of cognitive difficulties suggestive of dementia," and concluded, at the time, Clinton had probable dementia. However, Dr. Beaver also noted that he had indicated the importance of examining additional records to better understand the etiology of Clinton's difficulties. In the amended report, Dr. Beaver indicated that in the videotaped interviews, Clinton appeared "fully alert and oriented" and "relatively 'normal' without obvious evidence of dementia." Overall, Dr. Beaver revised his assessment of Clinton, concluding that while it was possible Clinton "may have some relatively mild neurocognitive difficulties with some early dementia, he clearly is not as impaired as I had first opined in my [first] report." He surmised that while he could not rule out primary dementia, the severity of the possible dementia appeared to be much less than he had previously suspected, and his reservations as to Clinton's competency to proceed to trial were "significantly fewer."

The psychosexual evaluation indicated Dr. Johnston reviewed a considerable amount of information regarding Clinton's mental condition and used that information to determine Clinton's "DSM-IV diagnosis, risk level to re-offend, capacity for treatment, recommendation regarding violent sexual predator status, conclusions, and suggestions for management." Dr. Johnston indicated three psychological tests were administered, in addition to the sixteen previous psychological tests performed by Dr. Beaver, but no valid results could be obtained from the new tests due to "what appeared to be [Clinton's] low intellectual functioning." In addition, Dr. Johnston analyzed Clinton's mental condition and psychological symptoms, arriving at a diagnosis of pedophilia, sexual abuse, adjustment disorder with anxious mood, and borderline intellectual functioning (possibly mental retardation). The report also indicated that "individuals who have low intellectual functioning could sometimes act on their inappropriate sexual impulses purely based on incapacity to contain sexual desires, and not related to personality issues." Relying on numerous factors, Dr. Johnston concluded Clinton posed a "high risk to re-offend." Based on this finding, Dr. Johnston analyzed the potential benefit of treatment

and discussed the availability of such treatment, ultimately recommending sexual offender treatment in a "structured environment," but noting that Clinton's "limited intellect might create limitations regarding his capacity to comprehend topics discussed in treatment and apply them to his life."

Taking into account the factors set forth in section 19-2522 and given the information before the district court, we cannot say the court manifestly disregarded section 19-2522. Most importantly, the court in this case did order a psychological evaluation after Clinton entered his guilty plea, in the form a psychosexual evaluation and social/sexual assessment. Thus, this case is readily distinguishable from instances where we have found district courts manifestly disregarded Rule 32 where the respective courts did not order any such evaluation in preparation for sentencing. *See, e.g., Jockumsen*, 148 Idaho at 819, 229 P.3d at 1181; *State v. Banbury*, 145 Idaho 265, 269, 178 P.3d 630, 634 (Ct. App. 2007). As a result, Clinton's argument on appeal is essentially that the psychosexual evaluation, in concert with the other reports before the court, inadequately addressed the specific issue of his possible dementia--specifically, that no actual diagnosis of dementia was made or consideration of the treatment options and the risks and benefits of such treatment. However, as we indicated above, we made clear in *Toohill* that a contention, made for the first time on appeal, that compliance with the law was simply inadequate--*e.g.*, that the report should have developed a particular point further, or that certain information was incomplete or inaccurate--is not reviewable under the manifest disregard standard. *Toohill*, 103 Idaho at 566-67, 650 P.2d at 708-09. Thus, where the district court ordered and received a comprehensive psychosexual evaluation and considered this report, in concert with other evidence regarding Clinton's mental condition, in fashioning a sentence, we conclude Clinton has not shown the court manifestly disregarded section 19-2522 in failing to order an additional psychological evaluation.

## B. Sentence Review

Clinton contends the district court abused its discretion in imposing a unified sentence of twenty years, with three years determinate, following his guilty plea to lewd conduct with a minor child under sixteen because, under any view of the facts, the sentence is excessive. Specifically, Clinton argues the district court erred in weighing his dementia as an aggravating factor at sentencing, as opposed to a mitigating factor; failed to properly consider his amenability to treatment; and failed to consider other mitigating factors, including the support Clinton

19

receives from friends, his steady maintenance of a residence, and his positive employment background.

An appellate review of a sentence is based on an abuse of discretion standard. *State v. Burdett*, 134 Idaho 271, 276, 1 P.3d 299, 304 (Ct. App. 2000). Where a sentence is not illegal, the appellant has the burden to show it is unreasonable and, thus, a clear abuse of discretion. *State v. Brown,* 121 Idaho 385, 393, 825 P.2d 482, 490 (1992). In deference to the trial judge, this Court will not substitute its view of a reasonable sentence where reasonable minds might differ. To show an abuse of discretion, the defendant must show that the sentence, in light of the governing criteria, is excessive under any reasonable view of the facts. *State v. Stevens*, 146 Idaho 139, 148-49, 191 P.3d 217, 226-27 (2008). A sentence of confinement is reasonable if it appears at the time of sentencing that confinement is necessary to accomplish the primary objective of protecting society and to achieve any or all of the related goals of deterrence, rehabilitation, or retribution applicable to a given case. *Toohill*, 103 Idaho at 568, 650 P.2d at 710. Where an appellant contends the sentencing court imposed an excessively harsh sentence, we conduct an independent review of the record, having regard for the nature of the offense, the character of the offender, and the protection of the public interest. *State v. Reinke*, 103 Idaho 771, 772, 653 P.2d 1183, 1184 (Ct. App. 1982). When reviewing the length of a sentence, we consider the defendant's entire sentence. *State v. Oliver*, 144 Idaho 722, 726, 170 P.3d 387, 391 (2007).

Here, in fashioning the appropriate sentence, the district court considered, among other things, the objectives of sentencing, the seriousness of Clinton's offense, his criminal history, the fact he had already received sexual offender treatment based on his previous offense, and the fact Clinton had indicated in his PSI for the previous offense that he had abused approximately fifty other children. The Court expressed its concern that Clinton would reoffend, noting he had exhibited a "pattern" of such behavior; had been diagnosed as having pedophilia, which posed a high risk to society; and had been labeled by the psychosexual evaluator as being a "high risk to reoffend." These risk factors, in combination with Clinton's dementia, convinced the court it was unclear whether treatment would be successful and, therefore, Clinton continued to be a risk to society. Although the court also explicitly noted Clinton had held a job and supported himself for a significant period of time and had shown a willingness to participate in treatment, the court surmised it had little option but to reject Clinton's request to be placed on probation or to retain

20

jurisdiction given the need to protect society. The court specifically noted it imposed the indeterminate period of seventeen years so the Department of Correction would always have control over where Clinton resided, but the sentence would also allow him to be released to an assisted living facility without access to children should things look less "bleak" after his determinate portion was served.

Clinton's contention that the district court erred in failing to consider his amenability to treatment, as well as his employment history, is belied by the record, as the court explicitly referenced both, engaging in a significant discussion as to the former. In addition, although the district court did not explicitly mention the support of Clinton's friends, it is clear from the discussion that the court believed Clinton posed a serious risk to society unless incarcerated, a factor that would not have been lessened by mere support from friends. Indeed, there was evidence the referenced friends from the trailer park where Clinton lived did not believe he committed the present offense, even though Clinton admitted to the act. Such an environment would hardly be conducive to effecting an atmosphere free of risk to children. Finally, in regard to Clinton's contention that the district court acted in contravention of *State v. Payne* 146 Idaho 548, 569-70, 199 P.3d 123, 144-45 (2008) in not properly considering his dementia as a mitigating factor, we note *Payne* concerns the use of mitigating evidence in the context of Idaho Code § 19-2515 pertaining to sentencing in *capital* cases. Thus, it is inapplicable to the case here. From the record, it is clear the district court considered Clinton's mental health, and Clinton does not cite to authority for his proposition that the district court erred in ultimately considering his allegedly deteriorating mental health to be a factor necessitating a more stringent sentence in order to protect society given the distinct facts of the case.

We conclude the sentence was not excessive in light of Clinton's offense, his past history, and the psychosexual evaluator's conclusion that he posed a high risk to reoffend. The district court carefully weighed the factors present and fashioned a sentence based on its finding that a significant period of incarceration was necessary to protect the public. The district court also included a three-year determinate period of incarceration, with a seventeen-year indeterminate period, which would allow Clinton to be released to an assisted living facility should his condition warrant it. Given any reasonable view of the facts, Clinton has failed to establish the district court abused its sentencing discretion.

21

# III.

## CONCLUSION

We conclude the manifest disregard standard, as opposed to *Perry's* fundamental error standard, continues to be viable in evaluating whether a district court erred in failing to order a psychological evaluation pursuant to Idaho Code § 19-2522. However, we conclude Clinton has not shown the district court manifestly disregarded the statute in this instance. We also conclude Clinton has not shown his sentence was excessive. Therefore, Clinton's judgment of conviction and sentence for lewd conduct with a minor child under sixteen are affirmed.

Judge LANSING **CONCURS.**

Chief Judge GRATTON, **SPECIALLY CONCURRING**

I concur in the result in this matter, but respectfully disagree with the majority's determination that the manifest disregard standard survives in light of *State v. Perry*, 150 Idaho 209, 245 P.3d 961 (2010).

First, if there was doubt from certain language used in *Perry* whether the fundamental error doctrine applied only to the adjudication of guilt phase of criminal proceedings, most assuredly that doubt has been erased by *State v. Longest*, 149 Idaho 782, 241 P.3d 955 (2010) and *State v. Gomez*, ___ Idaho ___, 281 P.3d 90 (2012). Thus, the concern in *State v. Toohill*, 103 Idaho 565, 566, 650 P.2d 707, 708 (Ct. App. 1982), that fundamental error had not been applied to proceedings subsequent to adjudication of guilt resulting in the perceived need to create a pathway (manifest disregard) for appellate review is now without basis.

Second, that the Idaho Supreme Court intends the *Perry* fundamental error standard to apply to ALL unobjected-to errors appears clear from the very recent pronouncement in *Gomez*:

> Here, the alleged error occurred during the proceedings that followed a guilty plea. Under *Perry*, the three part test for unobjected-to fundamental error applies to such criminal proceedings. All three elements of the standard articulated in Perry must be satisfied for Gomez's claim to be appealable to this Court.

*Gomez*, ___ Idaho at ___, 281 P.3d at ___. While I agree with the majority that our Supreme Court has not applied the manifest disregard standard and did not expressly reject the manifest disregard standard in either *Perry* or *Gomez*, it cannot be seriously argued that the Supreme Court is ignorant of this Court's utilization of the manifest disregard standard since 1982. Regardless of the lack of express rejection of the manifest disregard standard, the statement by

22

the *Gomez* Court that fundamental error applies to criminal proceedings following the determination of guilt is without limitation as to the type of proceeding or the nature of the unobjected-to error alleged. If the Supreme Court wished to carve out an exception for issues involving Idaho Code § 19-2522, it certainly could have done so, but did not.

Third, as noted by the majority, the *Perry* Court engaged in an extensive and comprehensive analysis of harmless error and fundamental error doctrines in regard to unobjected-to error. The Court stated:

> We take this opportunity to clarify the standards employed by Idaho appellate courts in analyzing alleged trial errors for harmless error or fundamental error, so as to: (1) provide guidance to our Appellate Courts applying the doctrine; (2) promote judicial fairness and equal application of law by eliminating unnecessary ambiguities; (3) reinforce the judicial preference for contemporaneous objections before the trial court.

*Perry*, 150 Idaho at 220, 245 P.3d at 972. The intent of the *Perry* Court in engaging in the fundamental error analysis was expressly stated as "[i]n order to establish a [singular] clear standard going forward." *Id*. Consequently, retention of a second standard, manifest disregard, is antithetical to the *Perry* Court's intent to articulate a single standard, particularly in light of the clear extension of the fundamental error doctrine by the *Gomez* Court to proceedings following the determination of guilt.

Fourth, the majority suggests that appellate review of an unobjected-to violation of I.C. § 19-2522 should not follow the fundamental error standard because fundamental error focuses on the impairment of the right of a defendant, whereas I.C. § 19-2522 imposes a duty on the district court. While a psychological evaluation under I.C. § 19-2522 is mandatory upon the discretionary finding that there is reason to believe that mental health will be a significant factor at sentencing, the "duty" of the district court to correctly apply that law is no different than the "duty" of the district to correctly apply any law.[1] Most assuredly, sentencing of a defendant without information deemed necessary to correctly and legally do so involves the impairment of

---

[1] I would note that the majority holds that the ordering of an I.C. § 19-2522 evaluation is solely the "duty" of the district court. However, the statute requires the evaluation "[i]f there is reason to believe the mental condition of the defendant will be a significant factor at sentencing *and for good cause shown*." (Emphasis added.) I would submit that it is no less counsel's duty to request an evaluation or object to its nonexistence than any other matter in which counsel must speak in protection of the defendant's rights.

a right of the defendant. *Perry*, however, requires the right of the defendant--to which review of unobjected-to error is sought--be of constitutional significance, which I will address below. The district court's "duty" to correctly apply I.C. § 19-2522 does not set it apart from any other law that the district court is duty-bound to apply.

Fifth, retention of the manifest disregard standard for I.C. § 19-2522 alone, comes down to a value determination by the majority. The majority states that *Perry* is incompatible "with vital considerations implicated by the use of psychological evaluations in fashioning an appropriate sentence . . . ." The majority suggests that a psychological evaluation for purposes of sentencing is somehow more important than any other consideration for the protection of "what is best for society." It is certainly in society's interest that a defendant be appropriately sentenced based upon appropriate data for both the defendant's sake and societal interest as a whole, including all of the goals of sentencing--namely, the protection of society, the deterrence of crime, the rehabilitation of the offender, and punishment or retribution. I wholeheartedly agree that a psychological evaluation, when there is reason to believe that mental health will be a significant factor at sentencing, is a very important piece of the defendant's profile that the district court should have at sentencing.[2] I do not, however, find a factual or legal analysis that compels me to conclude that a psychological evaluation is so singularly unique that it's unobjected-to lacking must be reviewed, particularly in a manner distinct from and less onerously applied than issues of constitutional magnitude.

Sixth, review of an unobjected-to lack of an I.C. § 19-2522 evaluation is, in fact, significantly easier for the defendant than review of constitutionally significant issues allowed in *Perry*. The *Perry* Court held:

> Idaho's previous articulation of fundamental error failed to provide appellate courts with a structured inquiry likely to lend itself to equal application. Therefore, after careful and considered analysis, we hold that in cases of unobjected to fundamental error: (1) the defendant must demonstrate that one or more of the defendant's unwaived constitutional rights were violated; (2) the error must be clear or obvious, without the need for any additional information not contained in the appellate record, including information as to whether the failure to object was a tactical decision; and (3) the defendant must demonstrate that the

---

[2]  In fact, I have been surprised to find occasions when the district courts have not taken up and made a record of the need for an I.C. § 19-2522 evaluation at the same time and with the same regularity as ordering a presentence investigation or a psychosexual evaluation.

error affected the defendant's substantial rights, meaning (in most instances) that it must have affected the outcome of the trial proceedings. . . . Placing the burden of demonstrating harm on the defendant will encourage the making of timely objections that could result in the error being prevented or the harm being alleviated.

*Id*. at 226, 245 P.3d at 978 (footnote omitted). Application of the manifest disregard standard requires only that the record demonstrate that (1) there is reason to believe that mental health will be a significant factor at sentencing; (2) an evaluation was not ordered; and (3) the information already before the court did not adequately meet the requirements of I.C. § 19-2522(3). *State v. Jockumsen*, 148 Idaho 817, 822-23, 229 P.3d 1179, 1184-85 (Ct. App. 2010). The defendant need not show a violation of constitutional magnitude, a clear violation, that the failure to object was not tactical or even harmful, which appears to be presumed under the manifest disregard standard. In fact, the phrase "manifest disregard" is now a misnomer. While the phrase may have been somewhat descriptive in *Toohill*, as it has evolved, review of an unobjected-to lack of an I.C. § 19-2522 evaluation, in reality, only requires simple failure to follow the statute.[3] Again, the point here is that the manifest disregard standard exalts review of a violation of I.C. § 19-2522 over any other unobjected-to error claims.

Seventh, the bright line announced by the *Perry* Court for review of unobjected-to errors is that "the alleged error . . . violates one or more of the defendant's unwaived constitutional rights." *Perry*, 150 Idaho at 228, 245 P.3d at 980. Where the asserted error relates to a violation of a rule or statute, instead of an infringement upon a constitutional right, the fundamental error doctrine may not be invoked. *Id*. at 228, 245 P.3d at 980. I agree with the majority that review of an unobjected-to lack of an I.C. § 19-2522 evaluation is likely foreclosed by application of the *Perry* fundamental error standard. In *State v. Mitchell*, 146 Idaho 378, 385, 195 P.3d 737, 744 (Ct. App. 2008), this Court stated that "sentencing is considered a critical stage in the trial process, and the 'constitutional guarantee of due process is fully applicable at sentencing.'" *Id*. (citing *Gardner v. Florida*, 430 U.S. 349, 358 (1977)). The Idaho appellate courts do not appear to have addressed whether the due process clause requires particular psychological information

---

[3] This is not consistent with the desire stated in *Perry* to "encourage the making of timely objections that could result in the error being prevented or the harm being alleviated." *Perry*, 150 Idaho at 226, 245 P.3d at 978.

for particular individuals in order to constitutionally sentence a defendant.[4] Generally, a judge may consider a broad range of information when fashioning an appropriate sentence. *State v. Morgan*, 109 Idaho 1040, 1042, 712 P.2d 741, 743 (Ct. App. 1985).[5] My research has not revealed a case in which the United States Supreme Court or the Idaho appellate courts have held that the lack of particular psychological information at sentencing presents a constitutional issue.[6] Without such a holding, the fundamental error doctrine may not be invoked. Although this result may seem harsh, a defendant is not without recourse as a defendant may pursue this issue in a proceeding for post-conviction relief. *See, e.g.*, *Vick v. State*, 131 Idaho 121, 952 P.2d 1257 (Ct. App. 1998).

Lastly, the *Perry* Court expressed a desire to provide a single standard promoting "judicial fairness and equal application of law by eliminating unnecessary ambiguities." *Perry*, 150 Idaho at 220, 245 P.3d at 972. However, the manifest disregard standard evolves yet again through the majority opinion. First, the reference to and incorporation of Idaho Criminal Rule 32 in the standard is abandoned. Second, in the past, generally, we have looked to whether the information in the record adequately meets the requirements of I.C. § 19-2522(3), an inquiry of an objective nature. The majority here turns to the pronouncement in *Toohill* that review is not available as to a "contention, made for the first time on appeal, that compliance with the rule was

---

[4] In *Toohill*, the Court stated that fundamental error denotes a denial of due process. As noted by the majority, it is not clear whether *Toohill* represents an extension of fundamental error or a separate basis for review. The *Toohill* Court did not specifically address a constitutional basis for its review regarding a lack of psychological data, but indicated that the reputation of the judicial process and the integrity of the courts demanded review. *Toohill*, 103 Idaho at 566, 650 P.2d at 708.

[5] In *State v. Dunn*, 134 Idaho 165, 997 P.2d 626 (Ct. App. 2000), this Court stated that "a defendant is denied due process when the sentencing judge relies upon information that is materially untrue or when a judge makes materially false assumptions of fact." *Id*. at 172, 977 P.2d at 633 (citing *State v. Gawron*, 124 Idaho 625, 627, 862 P.2d 317, 319 (Ct. App. 1993)). In *United States v. Petty*, 982 F.2d 1365, 1369 (9th Cir. 1993), the court held that due process is violated if a defendant is sentenced on materially incorrect information. But such is not the case here.

[6] In *United States v. Bergmann*, 317 F. App'x 528 (7th Cir. 2008), the Seventh Circuit Court of Appeals rejected a claim that due process required a defendant to be sentenced only on complete information about his mental condition.

26

simply inadequate--e.g., that the report should have developed a particular point further, or that certain information was incomplete or inaccurate." *Toohill*, 103 Idaho at 566-67, 650 P.2d at 708-09. The majority then reviews the extensive mental health information that was available to the district court and concludes that Clinton's claim is actually that the information before the court inadequately addressed the issue, and, therefore, manifest disregard is not shown. The majority makes no express determination that the information available to the district court adequately met the requirements of I.C. § 19-2522(3). A claim of manifest disregard of I.C. § 19-2522 requires a demonstration that the record reveals reason to believe that mental health will be a significant factor at sentencing. Consequently, the record in such cases will always contain substantial mental health data. Therefore, the claim must always be that the information before the district court was inadequate. Thus, under this analysis, manifest disregard will never be shown. This seems to highlight why our Supreme Court was announcing a single standard to "eliminate unnecessary ambiguities." *Perry*, 150 Idaho at 220, 245 P.3d at 972.